Linda K. ROBERTS, Plaintiff,

v.

PANHANDLE EASTERN PIPELINE COMPANY, Defendant.

No. 90–0026–CV–W–9.

United States District Court, W.D. Missouri, W.D.

April 5, 1991.

See also 737 F.Supp. 545.

Thomas W. Koelling, Koelling & Crawford, Kansas City, Mo., for plaintiff.

John B. Renick, James N. Foster, Jr., McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, Mo., Archangela M. DeSilva, Panhandle Eastern Pipeline Co., Houston, Tex., for defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

BARTLETT, District Judge.

This is an employment discrimination case in which plaintiff alleges that defendant violated R.S.Mo. § 213.055 because it refused to offer plaintiff a promotion due to her gender. Plaintiff also asserts a claim of intentional infliction of emotional distress. Plaintiff seeks lost wages and benefits, punitive damages and attorney's fees for both claims.

Defendant moves for summary judgment on both of plaintiff's claims arguing that: 1) plaintiff's sex discrimination claim is time-barred because plaintiff did not file charges with the Missouri Commission on Human Rights (MCHR) or file her civil action within the statute of limitations; 2) no genuine issue of material fact exists regarding a constructive discharge claim; 3) no genuine issue of material fact exists regarding plaintiff's sex discrimination claim; 4) plaintiff cannot prove damages; 5) no genuine issue of material fact exists regarding plaintiff's intentional infliction of emotional distress claim and, even if plaintiff has a viable emotional distress claim, it is barred because she has an exclusive remedy under the Missouri Workers' Compensation Law. Plaintiff opposes defendant's motion.

### I. *Undisputed Facts*

Plaintiff was hired by defendant in August 1979, to work as a Procedures Analyst in the Gas Supply Department of defendant's Kansas City, Missouri office. Defendant promoted plaintiff in 1984 to the position of Contract Control Specialist. In November 1986, defendant again promoted plaintiff to the position of Senior Contract Control Specialist. Plaintiff's immediate supervisor was Kathy Long, who reported to Bill Gifford, Manager of Contract Control in the Gas Supply Department.

In June 1987, defendant announced plans to consolidate its Kansas City and Houston offices. Defendant notified its Kansas City employees that, as part of the reorganization, it would be offering some of them the opportunity to transfer to a Houston-based job but that other jobs and employees would be eliminated when the Kansas City office closed on August 31, 1988.

At the time defendant announced its reorganization plans, five Senior Contract Control Specialists, Ed Hudson, Steve Matthews, Bruce Bridenball, Becky Koelling and plaintiff, were employed in the Kansas City Gas Supply Department. All were classified at a pay grade of 68.

As part of the consolidation, Jimmy Mogg was named General Manager of Contracts. He designed the organizational structure of what would become the single Gas Supply Department in Houston. Mogg personally selected three employees to report to him as Regional Managers in the new organization. They were Bill Gifford, Jeffrey Goodman and Herman Befeld.

As part of the reorganization, a grade 68 Gas Supply Representative (Representative) position was created which was comparable to the former Senior Contract Control Specialist position in Kansas City. In addition, five higher level, grade 70 Senior Gas Supply Representative (Senior Representative) positions were created.

Jimmy Mogg and the three Regional Managers were responsible for selecting personnel to fill positions in the reorganized Gas Supply Department in Houston.

On or about August 20, 1987, defendant tendered written offers to five male employees to fill the five Senior Representative positions. Three of these employees,

Randy Bower, Ed Newlin and Roy Boudreaux, had held higher level positions prior to the consolidation. Based on Bill Gifford's recommendation, the other two positions were offered to Steve Matthews and Ed Hudson. Plaintiff and Becky Koelling were offered positions in Houston as grade 68 Gas Supply Representatives.

Not all Kansas City employees received offers to transfer to Houston. No offer was made to Bruce Bridenball, who had held a Senior Contract Control Specialist position prior to consolidation.

On or about August 20, 1987, shortly after receiving her offer, plaintiff talked with Bill Gifford. She expressed her dissatisfaction with the offer and stated her belief that the job offers were made in a discriminatory manner.

Employees who received offers were given until December 1, 1987, to inform defendant of the acceptance or rejection of their offers. Randy Bower declined his offer in August 1987. Steve Matthews declined his offer on December 1, 1987. Plaintiff also declined her offer on December 1, 1987.

After plaintiff rejected her offer, several of defendant's higher level management employees asked plaintiff to reconsider her decision not to accept the Gas Supply Representative position. However, plaintiff continued to reject the offer until her termination on August 19, 1988.

In late spring or early summer of 1988, defendant filled one of the two Senior Representative positions that remained vacant. Based on Jeffrey Goodman's recommendation, the position was offered to and accepted by Bob Schults.

On May 3, 1988, plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the MCHR in which she alleged disparate treatment by defendant based on sex. Specifically, plaintiff alleged that the selection process used to make the consolidation offers was sexually discriminatory. Plaintiff also alleged that defendant discriminated against her on the basis of sex with regard to its subsequent failure to offer the *vacant* Senior Representative positions to her and with regard to its refusal to reconsider the offer made to plaintiff after she expressed her dissatisfaction with it. Plaintiff stated that the most recent act of discrimination was "December 1, 1987/continues."

On or about June 2, 1988, after plaintiff had filed her charge with the EEOC and the MCHR, Bill Gifford contacted plaintiff and asked her if she wished to be considered for the vacant Senior Representative position; he did not offer the Senior Representative position to plaintiff.[1] Plaintiff stated that she needed more information and that she would have to think about it. Gifford told plaintiff to think about it and "let him know." Plaintiff never told Gifford whether she wished to be considered for the position. The position was never filled.

On August 19, 1988, defendant discharged plaintiff when it closed its Kansas City office in accordance with its consolidation plan. Plaintiff knew that if she rejected the offer to transfer to Houston, defendant would terminate her employment when it closed the Kansas City office.

In November 1988, plaintiff amended her previous complaint but maintained essentially the same allegations of discriminations. Plaintiff alleged that the most recent act of discrimination occurred "Aug. 19, 1988/continues."

Plaintiff received a Right to Sue letter from the MCHR on November 30, 1989. Plaintiff filed this case in the Circuit Court of Jackson County, Missouri, on November 30, 1989. On January 8, 1990, defendant removed the case to this court.

II. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obli-

1. Gifford also contacted Becky Koelling and asked her if she was interested in the position.

gation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Elec. Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

■ The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 106 S.Ct. 2512.

### III. *Discussion*

1. Defendant's Argument that This Court Lacks Jurisdiction Because of Untimely Filing of MCHR Complaint

■ Section 213.075, Revised Missouri Statutes, provides that a complaint regarding an unlawful employment practice must be filed with the MCHR within 180 days of the alleged discriminatory act. R.S.Mo. § 213.075 (1986). *See also State ex rel. St. Louis County v. Missouri Commission on Human Rights*, 693 S.W.2d 173, 174 (Mo. App.1985). The MCHR has no jurisdiction to conduct proceedings on a complaint not filed within the statutory period. *Id.* Section 213.111, Revised Missouri Statutes, provides that a person must receive a right to sue letter from the MCHR before she may bring a civil action based on an alleged discriminatory act.

Because a plaintiff must file a complaint with the MCHR within 180 days of the discriminatory act in order to receive a right to sue letter and because a plaintiff must receive a right to sue letter in order to file a civil action, plaintiff's compliance with the 180 day time limit is a prerequisite to the maintenance of a civil employment discrimination action. *See Walker v. St. Anthony's Medical Center*, 881 F.2d 554 (8th Cir.1989) (construing a similar federal statute of limitations).

Defendant argues that this court lacks jurisdiction over plaintiff's sex discrimination claim because plaintiff failed to file her complaint with the MCHR within 180 days of the alleged discriminatory act. Defendant contends that the alleged discriminatory act occurred on August 20, 1987, when defendant initially made consolidation offers to its employees. Since plaintiff filed her initial complaint on May 3, 1988, more than 250 days after the offers were made, defendant argues that her civil action is time-barred.

Plaintiff contends that defendant engaged in continuing acts of discrimination beginning on August 20, 1987, and continuing until August 19, 1988, when defendant terminated plaintiff's employment. Therefore, plaintiff argues that under the continuing violations theory, her MCHR complaint was timely filed.

■ The Missouri Court of Appeals recognized a continuing violations theory in *Missouri Pacific Railroad Co. v. Missouri Commission on Human Rights*, 606 S.W.2d 496 (Mo.App.1980).[2] The court held that to establish continual discrimination under this theory, a plaintiff must show that a continual employment relationship existed during the time of the alleged discriminatory acts. Once the employment relationship is severed, any continuing employment discrimination ceases to exist.

*Id.* (citing *Rudolph v. Wagner Elec. Corp.*, 586 F.2d 90 (8th Cir.1978)).

The doctrine was further defined by the United States Supreme Court in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).[3] The Court stated:

A discriminatory act which is not made the basis for a timely charge is ... merely an unfortunate event in history which has no legal consequences.

Respondent emphasized the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists.

*Id.* at 558, 97 S.Ct. at 1889. Thus, a distinction exists between a continuing *violation*, which is actionable, and a continuing *impact*, which is not. *Missouri Pacific*, 606 S.W.2d at 501 (citing *United Air Lines*, 431 U.S. at 558, 97 S.Ct. at 1889); *State ex rel. St. Louis County*, 693 S.W.2d at 175.

The Eighth Circuit provides the following guidance for identifying continuing violations:

Where ... discrimination is not limited to isolated incidents but pervades a series or pattern of events which continue to within [180] days of the filing of the charge ..., the filing is timely ... regardless of when the first discriminatory incident occurred.

*Satz v. ITT Fin. Corp.*, 619 F.2d 738, 744 (8th Cir.1980) (citations omitted).

■ In the instant case, a continual employment relationship existed between plaintiff and defendant during the time of the alleged continuing acts of discrimination. Therefore, the critical question becomes whether the alleged discriminatory conduct continued to within 180 days of the

**2.** In doing so, the court relied heavily on federal decisions that had adopted the doctrine. *See Missouri Pacific*, 606 S.W.2d at 502.

**3.** *United Air Lines* involved a female airline employee who was discharged in 1968 because her marriage violated her employer's policy prohibiting married flight attendants. Between 1968 and 1972, this policy was declared to be violative of Title VII. In 1972, Evans was reinstated to her former job. She then sued her employer to regain the seniority rights she had lost during the period she had been illegally kept from working.

filing of plaintiff's MCHR complaint. On the basis of the record presented here, I find that it did.

Plaintiff does not merely allege that defendant discriminated against her in making the initial Senior Representative offers on August 20, 1987. If this were the only discriminatory act alleged by plaintiff, her civil action would be time-barred. However, plaintiff's allegations are much broader. She alleges that defendant's selection process (or processes) was discriminatory and that based on that process, defendant did not initially offer her a Senior Representative position and also did not later offer her one of the vacant Senior Representative positions. Specifically, plaintiff alleges that the offer tendered to Bob Schults for the Senior Representative position in the late spring of 1988 was the result of defendant's discriminatory selection process.

Plaintiff has presented facts that show defendant's alleged discrimination was not limited to isolated events but pervaded a series of events occurring within 180 days of the date plaintiff filed her MCHR complaint. The continuing violation was the continued application of defendant's allegedly discriminatory selection process. Plaintiff has shown that defendant continued to use its discriminatory selection process and continued to make discriminatory job offers until late spring of 1988, which was within 180 days of plaintiff's May 3, 1988, complaint. Therefore, plaintiff's sex discrimination claim is not time-barred by § 213.075.

Defendant also argues that plaintiff's discrimination claim is time-barred under R.S.Mo. § 213.111 which provides that any civil action based on employment discrimination must be brought no later than two years after the alleged discriminatory act occurred.

Based on the foregoing analysis, plaintiff has shown that defendant engaged in allegedly discriminatory conduct within two years of the November 30, 1989, filing of this case. Therefore, plaintiff's sex discrimination claim is not time-barred by § 213.111.

2. Defendant's Argument that There is No Evidence to Support Constructive Discharge Claim

Defendant argues that because there is no evidence to support a constructive discharge claim, she is entitled to summary judgment on such a claim. However, plaintiff has not alleged constructive discharge in either the complaint she filed with the MCHR or in this civil action. Defendant is not entitled to summary judgment on a claim which plaintiff has apparently never asserted.

3. Defendant's Argument that Plaintiff Cannot Establish a Prima Facie Case of Sex Discrimination

Defendant argues that it is entitled to summary judgment because plaintiff cannot establish a *prima facie* case of sex discrimination. Defendant argues that because there is no direct evidence that defendant considered plaintiff's sex as a determining factor in making consolidation offers, plaintiff cannot establish a *prima facie* case of sex discrimination.

The Missouri Supreme Court has held that disparate treatment claims of discrimination brought under § 213.055 must be evaluated pursuant to the methodology set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Midstate Oil v. Missouri Comm'n on Human Rights,* 679 S.W.2d 842, 845 (Mo. banc 1984).

Under *McDonnell Douglas,* plaintiff has the initial burden of proving her *prima facie* case by a preponderance of the evidence. To establish a *prima facie* case of sex discrimination involving promotion, plaintiff must show that 1) she belongs to a protected class, 2) she applied for or expressed interest in a job for which she was qualified, 3) despite her qualifications, she was rejected, and 4) thereafter, the position remained open and the employer continued to seek applicants with qualifications similar to those of the plaintiff. *McDonnell Douglas,* 411 U.S. at 802, 93

S.Ct. at 1824; *Hawkins v. Anheuser–Busch, Inc.*, 697 F.2d 810, 812 (8th Cir. 1983).

■ If plaintiff succeeds in proving her *prima facie* case, the burden of production shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the employee's rejection." However, the ultimate burden of persuasion remains at all times on plaintiff. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824 (citations omitted). If defendant carries its burden, plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by defendant are merely pretextual. *Missouri Comm'n on Human Rights v. City of Sikeston*, 769 S.W.2d 798, 801 (Mo.App.1989) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ Ultimately, plaintiff must show that her employer was motivated by discriminatory intent. *Id.* (citation omitted). She may carry her burden by either direct or circumstantial evidence. *Id.* (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983)).

■ Furthermore, where defendant "has done everything that would be required of it" if plaintiff had properly made out a *prima facie* case, it is irrelevant whether plaintiff really did so. *Id.* (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (1986)).

■ Based on *City of Sikeston*, defendant's argument that plaintiff is required to prove her *prima facie* case by direct evidence is meritless. Plaintiff may prove her *prima facie* case by either circumstantial or direct evidence. In this case, plaintiff has properly presented direct and circumstantial evidence sufficient to meet each element of her *prima facie* case.

■ Furthermore, defendant has done everything that would be required of it if plaintiff had established a *prima facie* case; it has "articulated a legitimate, non-discriminatory reason" for its decision not to select plaintiff for promotion. Therefore, defendant is not entitled to summary judgment based on this issue.

4. **Defendant's Argument that Plaintiff Cannot Prove Damages**

■ Defendant alleges that it is entitled to summary judgment because plaintiff cannot prove damages with regard to her sex discrimination claim. Specifically, defendant argues that plaintiff cannot show that she would have accepted a Senior Representative position and transferred to Houston if defendant had offered the Senior Representative position to her.

■ This argument is not persuasive primarily because defendant presents no legal authority to support its contention that plaintiff must prove she would have accepted the offer. Furthermore, even if applicable law does require plaintiff to prove that she would have accepted the offer, she has properly demonstrated that a genuine issue of material fact exists regarding her willingness to accept such an offer. For instance, defendant has shown that plaintiff testified she "most likely would have accepted [the Senior Representative offer]," that she and her husband had just built a new home and that she "may have" told someone it was the last home she would want to move into. However, plaintiff states that she testified she would have "seriously consider[ed]" accepting the Senior Representative position if it had been offered to her and that she "never outright rejected moving to Houston."

Based on the foregoing, defendant is not entitled to summary judgment on the ground that plaintiff cannot prove damages.

5. **Defendant's Argument that it Should Have Summary Judgment on Plaintiff's Claim of Intentional Infliction of Emotional Distress**

■ Defendant argues that it is entitled to summary judgment regarding plaintiff's claim of intentional infliction of emotional distress because defendant's conduct was not extreme and outrageous. Defendant also argues that even if there is a genuine issue regarding the outrageousness of its

conduct, plaintiff's emotional distress claim is barred because she has an exclusive remedy under the Missouri Workers' Compensation Law.

Defendant has met its burden under Rule 56 and has properly presented evidence demonstrating the absence of genuine issues of material fact regarding these two points. Because plaintiff has failed to respond to defendant's arguments and has presented no evidence showing a dispute of material fact on these issues, she has not met her burden under *Celotex* for opposing defendant's summary judgment motion. Therefore, defendant is entitled to summary judgment in its favor regarding plaintiff's claim for intentional infliction of emotional distress.

### IV. *Conclusion*

Based on the foregoing, it is hereby ORDERED that:

1) defendant's Motion for Summary Judgment on plaintiff's sex discrimination claim (Count I) is denied on all grounds;

2) defendant's Motion for Summary Judgment is denied as to a constructive discharge claim that plaintiff never asserted; and

3) defendant's Motion for Summary Judgment on plaintiff's intentional infliction of emotional distress claim (Count II) is granted.