George L. GIPSON, Plaintiff,

v.

KAS SNACKTIME CO., A DIVISION OF BORDEN, INC., Defendant.

No. 91–1827C(5).

United States District Court,
E.D. Missouri,
Eastern Division.

Oct. 6, 1993.

Michael J. Hoare, Michael J. Hoare, P.C., St. Louis, MO, for plaintiff.

Thomas M. Hanna, President, McMahon and Berger, St. Louis, MO, for defendant.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff has filed a six-count employment discrimination case alleging racial discrimination in violation of the Missouri Human Rights Act (MHRA), § 213.010 *et. seq.* R.S.Mo. and Title VII, 42 U.S.C. § 2000e *et seq.* Counts I through IV are pendent state claims (I—violations of MHRA; II—punitives on Count I; III—retaliation claim under MHRA; IV—punitives on Count III); while Counts V and VI are Title VII claims (V—violations of Title VII and VI—retaliation claim under Title VII). Plaintiff further seeks monetary relief under his Title VII claims. This matter is before the Court on the defendant's motion for partial summary judgment (# 0), filed March 25, 1993. Responsive pleadings have been filed.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the

moving party. *Mt. Pleasant,* 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

Plaintiff alleges that he has been subjected to a continuing course of discriminatory conduct mainly attributed to his (former) immediate supervisor, Rick Brank. His complaint focuses upon thirteen (13) areas of racial discrimination. In Paragraph 9 of his complaint, plaintiff makes the following allegations:

(a) Defendant gave Plaintiff false performance evaluations.

(b) Defendant denied Plaintiff raises to which he was entitled by virtue of his performance.

(c) Defendant placed Plaintiff on a performance improvement program when his performance did not warrant such action.

(d) Defendant threatened to fire Plaintiff when his performance did not warrant termination.

(e) Defendant threatened Plaintiff with discharge when Plaintiff's conduct did not warrant discharge.

(f) Defendant demoted Plaintiff when his performance did not warrant demotion.

(g) Defendant assigned Plaintiff to a rural assignment where it knew or should have known that Plaintiff was not welcome because of his race and/or color.

(h) Defendant threatened Plaintiff with physical injury.

(i) Defendant subjected Plaintiff to racial name-calling.

(j) Defendant denied Plaintiff promotion to positions which were available and which he could have performed.

(k) Defendant refused to allow Plaintiff to hire employees when other employees in comparable positions were allowed to make such decisions.

(l) Defendant refused to allow Plaintiff to hire black persons, except in situations where the prospective employee would be assigned to a sales route that was predominantly black.

(m) Defendant has failed and refused to take action sufficient to remedy its unlawful conduct.

In his discovery responses, plaintiff provides a more detailed account of what he alleges to be the acts of racial discrimination perpetrated against him since July of 1987. In Paragraph 13 of his complaint, plaintiff alleges that he was subjected to the acts contained in Paragraph 9(f)–(*l*) after complaining of possible racial discrimination. On March 3, 1989 plaintiff was demoted from Regional Sales Manager to District Sales Manager. Although this "demotion" resulted in a change of duties and responsibilities, there was no loss in pay.

On July 31, 1989 plaintiff filed simultaneously a charge of discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC). Defendant's Deposition (of Plaintiff) Exhibit ZZZ. Plaintiff checked only the box marked "race" in the section entitled **CAUSE OF DISCRIMINATION BASED ON.** The substantive part of his charge reads as follows:

I have been employed by KAS Snacktime Co. since 3/1/72. I was a Regional Manager from 6/2/86, until my demotion on 3/3/89. Beginning on or about 10/1/87 I was continually harassed by my immediate supervisor in that I was reprimanded, rated unfairly, placed on probation and performance programs, subjected to different terms and conditions of employment from a White Regional Manager, and finally demoted.

As of today's date, plaintiff remains employed with the defendant as a District Sales Manager.

On July 27, 1991 plaintiff originally filed this cause of action in the Circuit Court for the City of St. Louis. It was subsequently timely removed to federal court.

In its Motion for Partial Summary Judgment, defendant seeks summary judgment in its favor with respect to Counts I, II, III, IV, and VI in their entirety; and to claims, in Count V, regarding alleged discriminatory acts occurring after July 31, 1989. Defendant submits that 1) most of the allegations contained in Counts I and III, i.e. Paragraph 9(a)–($l$) inclusive, are time-barred under the MHRA because they occurred more than two (2) years prior to the filing of this cause of action; 2) claims contained in Counts I, III, V, and VI regarding alleged discriminatory acts occurring after July 31, 1989 (i.e. Count I—Paragraph 9(a), 1990 Evaluation and Paragraph 9(j), denial of promotions; Count III—retaliation; Count V—Paragraph 9(f)–($l$); and Count VI—retaliation) are not administratively exhausted; 3) if Counts I and III fail, then so must their punitives companion Counts II and IV; and 4) the damages claims in Counts V and VI must be dismissed because the Civil Rights Act of 1991 is not retroactive to cases filed prior to and/or pending at the time of the Act's enactment.

Plaintiff, on the other hand, contends that his claims in Count I are not time-barred because they are all part of "continuing violations" of the MHRA and Title VII, thus the statutory time for filing an action is extended. He further contends that acts occurring after the filing of his administrative charge are properly before the Court because they are "like or reasonably related to" the substance of his July 31, 1989 charge. Finally, as to his damages claims in Counts V and VI, plaintiff contends that they should not be dismissed because the issue of retroactivity has not been settled by the United States Supreme Court (he alleges that currently before the Court are two cases which should settle the issue of retroactivity of the Civil Rights Act of 1991); or that if this Court should decide to dismiss his Title VII damages claims, it should do so without prejudice subject to refiling once the Supreme Court has settled the issue.

## MHRA—STATUTE OF LIMITATIONS

■ Defendant argues that most of the allegations contained in Paragraph 9 of Count I regard events occurring more than two (2) years prior to the filing of this cause of action. Defendant considers all claims regarding alleged discriminatory acts occurring more than two (2) years prior to the filing of this cause of action to be time-barred. As for acts occurring within the time limitation, defendant argues that these claims should be dismissed because they were not raised in plaintiff's MCHR/EEOC charge of July 31, 1989. The MHRA has a two statutes of limitations. Section 213.075 R.S.Mo. provides that a charge of employment discrimination must be filed with the MCHR within 180 days of the alleged discriminatory act. The MCHR has no jurisdiction to conduct proceedings on a complaint not timely filed; consequently, no right-to-sue letter would be issued. § 213.075; *Roberts v. Panhandle Eastern Pipeline Co.,* 763 F.Supp. 1043, 1048 (W.D.Mo.1991). Section 213.111 R.S.Mo. provides that any civil action filed in court must be filed within ninety (90) days of receipt of a right-to-sue letter from the MCHR but "no later that two years after the alleged cause of action occurred ..." § 213.111(1).

Based upon the plaintiff's deposition testimony, the defendant submits that the claims raised in Paragraph 9(a)–($l$) are time-barred because they occurred more than two years prior to the filing of this cause of action.

Paragraph 9(a) regards false evaluations. According to the plaintiff's deposition testi-

mony, these occurred in October 1987, April 1988 and March 1990. Paragraph 9(b) regards denial of pay raises. According to the plaintiff's deposition testimony, these occurred in October 1987 and January 1988. Paragraph 9(c) regards plaintiff's placement in a performance improvement program. Plaintiff testified that this occurred in August 1988. Paragraph 9(d) and (e) regard threats of discharge. Plaintiff testified that these threats were made at various times from August 1987 to February 1989. Paragraph 9(f) alleges an unwarranted demotion. It is undisputed that this occurred on March 3, 1989. Paragraph 9(g) alleges reassignment knowingly to a rural area where plaintiff, as a black man, would not be welcomed. Plaintiff testified that this reassignment occurred on March 6, 1989. Paragraph 9(h) alleges physical threats against the plaintiff. Plaintiff testified that this occurred in July 1988. Paragraph 9(i) regards racial name-calling. Plaintiff testified that his immediate supervisor called him a racially derogatory name in July 1988. Paragraph 9(k) and (*l*) regard stripping plaintiff of the power/responsibility to approve or disapprove the hiring of subordinates. Plaintiff testified that this power/responsibility was removed by his immediate supervisor in October 1987.

Plaintiff does not submit any evidence to contradict the deposition evidence submitted by the defendant. Instead, he simply argues that all of the acts alleged occurring prior to the filing of the MCHR/EEOC charge are "continuing violations" which extend the statutory filing period. He further argues that the acts occurring after the filing of the administrative charges are like or reasonably related to the acts contained in the administrative charges; therefore plaintiff has exhausted his administrative remedies and his complaint is timely filed. Plaintiff provides no factual support for his contention that the acts are "continuing violations" and/or reasonably related to the acts complained of in his administrative charges.

The parties' cited caselaw is not extremely helpful to the Court on the issue of the two (2) year limitation contained in § 213.111(1). Missouri courts have recognized the concept of continuing violations in employment dis-

crimination cases. *Roberts v. Panhandle Eastern Pipeline Co.,* at 1049, *citing, Missouri Pacific Railroad Co. v. Missouri Commission on Human Rights,* 606 S.W.2d. 496 (Mo.App.1980). In *Missouri Pacific Railroad Co,* the Court held that in order to establish discrimination in the context of continuing violations, a plaintiff must show that a continual employment relationship existed during the time of the alleged discriminatory acts. *Id.,* at 501–502. Once the employment relationship is severed, the discrimination ceases. *Id.,* at 501. The United States Supreme Court had earlier defined the doctrine when it stated:

> A discriminatory act which is not made the basis for a timely charge is ... merely an unfortunate event in history which has no legal consequences.
>
> Respondent emphasized the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists.

*United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). It is then that a distinction must be made between a continuing *violation* which the courts find actionable, and a continuing *impact,* which the courts have determined is not actionable. *Roberts v. Panhandle Eastern Pipeline,* at 1049, *citing, Missouri Pacific,* at 501 and *United Air Lines v. Evans,* 431 U.S. at 558, 97 S.Ct. at 1889.

The Eighth Circuit has provided some guidance in the application of the "continuing violations" theory, especially with regards to a statute of limitations issue. In *Satz v. ITT Financial Corp.,* 619 F.2d 738, 744 (8th Cir. 1980), the Court stated:

> Where ... discrimination is not limited to isolated incidents but pervades a series or pattern of events which continue to within [180] days of the filing of the charge ..., the filing is timely ... regardless of when the first discriminatory incident occurred.

In support of his contention that his complaint is timely filed under § 213.111(1), plaintiff relies on the holding of *Roberts v.*

*Panhandle Eastern Pipeline, supra.* In *Roberts,* the Court did find that plaintiff has adequately supported a theory of continuing violations because she claimed that the defendant's discriminatory selection process pervaded a series of events occurring within 180 days of the date plaintiff filed her MCHR charge and that at least one of the alleged discriminatory actions occurred within two years of her filing of the case in court. *Id.,* at 1050. In the present situation, the Court finds that the acts preceding the filing of the MCHR charge were continuing in nature. They were not isolated events, but rather all related to plaintiff's job performance, culminating in his demotion. Since his demotion occurred within 180 days of the filing of the MCHR charge, the claims in Count I are not time-barred by § 213.075 R.S.Mo.

The defendant cites *Richard v. McDonnell Douglas,* 469 F.2d 1249, 1253 (8th Cir.1972) and *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir.1975) for the argument that the Eighth Circuit has applied the theory in Title VII actions only in cases of "compelling circumstances" when employment was continuing. The defendant contends that such a situation does not exist in the present case. The Court does not put much stock in the defendant's argument. Firstly, these two cases were decided prior to the Supreme Court case of *United Air Lines v. Evans, supra.* and the cases previously cited by this Court. Secondly, defendant's counsel appears to be under the mistaken impression that the plaintiff is no longer employed by the defendant. The Court's information and belief is that plaintiff is currently employed (and was employed at the time of filing his judicial complaint) by the defendant in a demoted capacity. Furthermore, the cases cited by the defendant dealt with situations wherein the plaintiff had been constructively or actually discharged and the Court in *Olson* even stated that "[w]hile the continuing discrimination theory may be available to present employees ... even though on layoff ... we do not think this theory has validity when asserted by a former employee." *Olson,* at 1234 (citations omitted). Finally, the defendant fails to demonstrate the applicability of Title VII

decisions to the issue of timeliness under § 213.111(1).

Even so, the Court determines that the plaintiff's allegations of discrimination occurring prior to his filing of his administrative charges are time-barred under § 213.111(1). Even though his claims of discrimination up to the filing of the administrative charges are continuing in nature with respect to the time limitations imposed by § 213.075 R.S.Mo., none of them occurred within two (2) years of the filing date of his judicial complaint as required by § 213.111(1) R.S.Mo. *See, Roberts v. Panhandle Eastern Pipeline,* at 1050.

As for his allegations in Count I occurring after the filing of his administrative charges, the Court determines that these are time-barred under § 213.075 because they did not occur within 180 days **prior** to the filing of the MCHR/EEOC charges or are the subject of any MCHR/EEOC charge. Paragraph 9(a) also refers to an evaluation in March 1990; while Paragraph 9(j) refers to denial of promotions (record is unclear as to when these denials occurred).

Plaintiff contends that these two claims are timely because they are "like or reasonably related to" the claims made in his July 31, 1989 administrative charge. The Court disagrees.

■ A Title VII plaintiff or a MHRA plaintiff may raise claims in court which are different from those contained in the administrative charge(s) only if they are "like or reasonably related to" the allegations contained in the administrative charges. *See, Satz v. ITT Financial Corp.,* 619 F.2d 738, 741 (8th Cir.1980). The allegation that his 1990 evaluation was racially motivated and that he was denied promotions on the basis of race are not like or reasonably related to the claims in his July 31, 1989 administrative charges.

■ The MCHR/EEOC charge is quite specific in its allegations. Plaintiff clearly complains that he was "reprimanded, rated unfairly, placed on probation and performance programs, subjected to different terms and conditions of employment from a White Regional Manager, and finally demoted." His 1990 evaluation was approximately

two (2) years after his complained of 1987 and 1988 evaluations. Each performance evaluation is based upon the preceding year's job performance, independent of any other year's performance. Each job performance evaluation normally results in a separate wage increase based only upon that year's evaluation. The Court determines that each year's job performance evaluation is a separate and distinct act which merits specific notation in an administrative charge or a separate charge for each evaluation. Plaintiff should have filed another MCHR/EEOC charge for the 1990 evaluation if he believed it to be racially motivated.

■ As for the denial of promotions, plaintiff's charge of demotion does not encompass a charge of denial of promotion. A plaintiff's judicial claim of discriminatory failure to promote is not like or reasonably related to administrate charges of discriminatory demotion. *Evans v. American Nurses Ass'n*, 657 F.Supp. 1277, 1279 (W.D.Mo.1987).

Based upon the foregoing analysis, summary judgment will be granted in favor of the defendant on Count I in its entirety. Consequently, since Count I fails, Count II must also be dismissed.

### COUNTS III AND VI—RETALIATION

■ Defendant contends that Missouri statutory law clearly makes the act of retaliation distinct from other acts of discrimination, and therefore requires the filing of a timely charge before the Court can exercise jurisdiction pursuant to the MHRA. § 213.070(2) R.S.Mo. Defendant further contends that the claim of retaliation, under the MHRA and Title VII, is not "like or reasonably related to" the claims presented in his only administrative charge(s).

Plaintiff claims that the discriminatory acts listed in Paragraph 9(f) through (*l*), were in retaliation for plaintiff's protests to defendant regarding racial discrimination and therefore are reasonably related to his claims contained in the administrative charge(s).

Plaintiff has provided no factual support for the Court to consider in opposing the defendant's summary judgment motion as it regards plaintiff's claims of retaliation. He makes the bold assertion that he protested racial discrimination to the defendant's agents but that nothing was done and Mr. Brank was allowed to retaliate by engaging in the acts enumerated in Paragraph 9(f) through (*l*). Despite the plaintiff's lack of affirmative evidence to rebut the points raised by the defendant, the Court has searched the record before it for any specific facts that support the plaintiff's claims of retaliation.

In his answers to defendant's interrogatories, plaintiff made a chronological list of what he recalls are the discriminatory acts. Interrogatory Exhibit No. 1. In October 1987, plaintiff alleges that he met with Mr. Brank and Pat Miller regarding his October 1987 job performance evaluation. Plaintiff alleges that it was false and that as a consequence of the false evaluation he was put on a job improvement program. Plaintiff provides no evidence of this meeting. In the Fall of 1987, plaintiff alleges that he called Charles Kester, Vice President of Human Resources, about the rejection of his performance appraisal of a subordinate. He claims that subsequent to the phone call, Mr. Brank issued reprimands to the plaintiff and interfered in his relationship with his subordinates. Plaintiff provides no evidence of this phone call. Plaintiff alleges that in Jan/Feb 1988 he wrote Charles Kester complaining about his treatment by Mr. Brank. He further alleges that a meeting was held in March 1988 attended by himself, Mr. Brank, Pat Miller, and Charles Kester to discuss plaintiff's complaints. Plaintiff provides no evidence of the letter written in Jan/Feb 1988 or of the meeting in March 1988. Plaintiff alleges in July 1988 that he complained of racial discrimination to Bruce Cutting. Plaintiff provides no evidence of this complaint to Mr. Cutting. Plaintiff alleges in January 1989 that he again complained to Charles Kester about Mr. Brank's discriminatory practices; he further alleges that he also complained to Ron Albers in the Columbus, Ohio office about Mr. Brank's discriminatory practices. Plaintiff provides no evidence of his conversations with either man in January 1989.

Plaintiff has provided absolutely no affirmative evidence, no affidavits, no deposition testimony to support his allegations that he repeatedly complained to defendant's agents and that following the complaints, Mr. Brank engaged in retaliatory conduct. Plaintiff's complaints and the acts listed as retaliatory preceded his filing of the MCHR/EEOC charge yet there is no mention of them in his July 1989 charge.[1] He did not mark off the box labeled "Retaliation" as cause for the discrimination. Plaintiff was obliged to file an administrative charge encompassing these retaliatory acts and having failed to do so, he cannot now seek judicial relief for them. As to any acts, such as the 1990 evaluation or promotion denials, that occurred after the filing of the administrative charges, the Court has already determined that these claims are not like or reasonably related to the claims enumerated in the July 31, 1989 charges. Summary judgment will be granted in favor of the defendant as to Counts III and VI.

Since summary judgment has been granted in favor of the defendant as to Count III, Count IV which seeks punitives under Count III must also be dismissed.

### COUNT V—TITLE VII

Since the Court has determined that claims regarding discriminatory acts occurring after the filing of the MHRC/EEOC charges are not like or reasonably related to the July 31, 1989 administrative charges; and are not the subject of any other administrative charge, this Court lacks subject matter jurisdiction to entertain these claims. Summary judgment will be granted to the defendant as to those claims regarding discriminatory acts occurring after the filing of the July 31, 1989 administrative charges.

### COUNT V AND VI—DAMAGES

Plaintiff argues that the issue of retroactivity is still an open issue due to the pendency

before the United States Supreme Court of two cases referred to as the *Landgraf* and *Rivers* cases. Plaintiff contends that these two cases squarely raise the issue of retroactivity of the Civil Rights Act of 1991.

A presumption against retroactivity in the absence of clear-cut congressional intent to the contrary is the law of this Circuit, as recently reiterated by the Court when considering retroapplication of the Civil Rights Act of 1991. *Parton v. GTE North*, 971 F.2d 150, 155 (8th Cir.1992), *citing, Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1375–77 (8th Cir.1992). This Court finds the Eighth Circuit's prior determinations on this issue to be applicable here. Plaintiff is not entitled to compensatory or punitive damages on Counts V and VI of his complaint. However, in fairness to the plaintiff, the Court will dismiss without prejudice the damages claims contained in Count V and VI (the Court recognizes that the issue is of little importance with regard to Count VI since it has been dismissed in its entirety).

The Court has reviewed the legal memorandum, deposition and exhibits submitted by the defendant in support of its motion for partial summary judgment. The defendant has met its initial burden to demonstrate that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). Once the defendant has met its burden, the burden shifted to the plaintiff to "set forth affirmative evidence, specific facts, showing that there [was] a genuine dispute on [those] issue[s]." *City of Mt. Pleasant v. Associated Electric Coop.*, 838 F.2d 268, 274 (8th Cir. 1988). Although the plaintiff filed a response, he totally failed to present to the Court any affirmative evidence or specific facts showing that genuine disputes re-

---

1. The Court is a bit confused by the defendant's statement in its memorandum in support of motion for summary judgment and its responsive pleading that the acts enumerated in Paragraph 9(f) through (*l*), except for the demotion, occurred after the filing of the administrative charge(s) on July 31, 1989. The defendant's own recitation of the dates of these events in Section I

of his memorandum in support, the plaintiff's Interrogatory Exhibit No. 1, and the plaintiff's deposition testimony places the occurrences of these events from July 1987 to April 1989, prior to the filing of the administrative charge(s) in July 1989. The only questionable events, as to when they occurred, are the denials of promotions.

mained on the issues raised in the partial summary judgment motion. Gipson failed to rebut the defendant's evidence. He failed to submit any deposition testimony, any affidavits, or any documents to support his opposition to the partial summary judgment motion. Plaintiff could not defeat the defendant's well-supported motion without offering any controverting affidavits, deposition testimony, or evidence from which a reasonable jury could return a verdict in his favor. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12. Reliance solely upon the allegations in his pleadings is insufficient to raise a genuine issue of fact. *See, Green v. St. Louis Housing Authority,* 911 F.2d 65, 68 (8th Cir.1990).

It is this Court's determination that the only claims now pending before the Court are the claims expressed in Count V regarding alleged discriminatory conduct preceding the filing of the MHRC/EEOC charges and are the subject of those charges. Since Count V is a count brought pursuant to Title VII and precedes the enactment of the Civil Rights Act of 1991, plaintiff's cause of action will be tried before the Court without benefit of a jury.