Martin G. DAFFRON, Appellant,

v.

McDONNELL DOUGLAS CORPORATION, Respondent.

No. 63781.

Missouri Court of Appeals, E. District, Division Three.

March 1, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 7, 1994.

Application to Transfer Denied May 26, 1994.

Wallach Law Firm, Jerome Wallach, Michael F. Dandino, St. Louis, for appellant.

Peper, Martin, Jensen & Hetlage, Thomas A. Mickes, St. Louis, for respondent.

SIMON, Presiding Judge.

Appellant, Martin G. Daffron, appeals a summary judgment entered in favor of respondent, McDonnell Douglas Corporation, in an employment discrimination action. On appeal, appellant contends the trial court erred in granting respondent summary judg-

ment on the grounds that (1) appellant's complaint to the Missouri Commission on Human Rights (MCHR) was not timely filed; and (2) appellant is not a handicapped employee under § 213.010 R.S.Mo. (1986). (All further statutory references shall be to R.S.Mo.1986, unless otherwise noted.) We reverse and remand.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c). The standard of review on appeal from a summary judgment was recently set out in *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[1–3], [4–6] (Mo. banc 1993), where our Supreme Court stated:

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially **de novo.** The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

(Citations omitted.)

Applying this standard, the record shows that appellant was an employee of respondent for over 29 years. In 1990, he worked as a technical specialist senior in respondent's Data Processing Division. On July 17, 1990, appellant was transferred from under the supervision of James Merlo, Manager Shift Production Operations, to under the supervision of Mindy Westerfield. On or about July 18, 1990, appellant received from respondent a letter advising that he was on a list of employees to be laid off as a reduction in force. The letter stated that unless otherwise notified, effective September 17, 1990, appellant would be laid off and that this date may be extended by respondent up to fourteen days. Appellant inquired about the letter to his former supervisor Merlo. Merlo had ranked the value of the functions of his department, including appellant's former functions, and the individuals best qualified for those functions. Merlo told appellant that he should not be on the list of employees selected for layoff, and that appellant was so far up the list he should not have been touched for the layoff. Appellant also inquired of Dave Borlin, Director Central Computing Services responsible for appellant's former function, who evaluated Merlo's rankings and made the selection as to which employees would be affected by the reduction in force. When appellant and Borlin met regarding the layoff letter, on or about July 19, 1990, Borlin told appellant not to be concerned about the letter because "Borlin needed totals at the time and would be relooking at the layoff list and pulling people off the list." This conversation with Borlin left appellant with the belief and understanding that he should not be worried about receiving the letter. Merlo and another of respondent's supervisory employees, Carl Grossheim, attempted to get appellant transferred to Merlo's department and shift, but Borlin blocked or rejected this proposal. Of the 150 employees on the original layoff list, 6 were not laid off.

Westerfield told appellant in July, 1990 that his major responsibility during the last couple months of his employment was to find another job. Until the date of his termination became effective as scheduled on September 17, 1990, appellant reported for work and performed his duties. At some point, the date of which is unclear from the record, appellant applied for disability benefits from the Social Security Administration. Appellant acknowledged in his deposition the decision awarding disability benefits, and ac-

knowledged that the last paragraph of that decision states, "To be considered disabled, a person must be unable to perform substantial gainful work. The impairment must be so severe as to prevent the person from working not only in his usual occupation, but in *any other substantial gainful work* considering age, education, training, and work experience. Claimant [appellant] meets this requirement as of September 17, 1990, and has been disabled since that date." When asked in his deposition if he agreed with that, appellant stated, "I have to, yes, sir. I received it."

On March 6, 1991, appellant filed a complaint of discrimination with the Missouri Commission on Human Rights (MCHR) alleging that he believed he was selected for layoff due to his knee injury, heart problems, and ulcer. He sought reinstatement with full seniority and benefits, any pay increases, back pay, and damages for pain, humiliation, and suffering. On October 24, 1991, MCHR issued its Notice of Right to Sue pursuant to § 213.111. On January 21, 1992, appellant filed a petition in the Circuit Court. Subsequently, respondent filed a motion for summary judgment on the grounds that (1) appellant did not timely file his complaint with MCHR, in that it was not filed within 180 days of the alleged discriminatory act; and (2) appellant is not a "handicapped person" as defined by § 213.010 in that the statute excludes impairments which interfere with performing the job and the Social Security Administration has determined that appellant is unable to perform substantial and gainful work. The trial court granted respondent's motion for summary judgment, finding that each of the issues presented in respondent's motion "is independently grounds for sustaining the motion."

■ Appellant's first point on appeal is that the trial court erred in granting summary judgment in favor of respondent on the basis that his complaint of discrimination was not timely filed with MCHR because his complaint was filed within 180 days of the alleged discriminatory act in that the actual *layoff of September 17, 1989 was the discrim*inatory act. Appellant argues that the court improperly applied the 180 day statutory fil-

ing period by calculating the period from the date appellant received the letter notifying him of the layoff rather than the date appellant was actually discharged. He claims that summary judgment was not appropriate when the undisputed evidence presented in opposition to respondent's motion shows that not all employees who received a layoff letter were laid off and appellant was assured by respondent's employees that he would be removed from the layoff list.

■ A complaint regarding an unlawful employment practice must be filed with MCHR within 180 days of the alleged discriminatory act. Section 213.075; *see also, Southwestern Bell Telephone Co. v. Missouri Commission on Human Rights,* 863 S.W.2d 682, 684[2] (Mo.App.1993). MCHR has no jurisdiction to conduct proceedings on a complaint not filed within the statutory period. *Id.* Section 213.111 provides that a person must receive a right to sue letter from MCHR before he may bring a civil action based on an alleged discriminatory act. *Roberts v. Panhandle Eastern Pipeline Co.,* 763 F.Supp. 1043, 1048[8] (W.D.Mo.1991), citing *State ex rel. St. Louis County v. Missouri Commission on Human Rights,* 693 S.W.2d 173, 174 (Mo.App.1985). Because a plaintiff must file a complaint with MCHR within 180 days of the discriminatory act in order to receive a right to sue letter and because a plaintiff must receive a right to sue letter in order to file a civil action, a plaintiff's compliance with the 180 day time limit is a prerequisite to the maintenance of a civil employment discrimination action. *Roberts,* at 1048[8].

Here, the parties agree on the requirements of the applicable statutes, but disagree on what constitutes the alleged discriminatory act. Their contentions focus on the single question of when the limitation period for filing of the complaint commenced to run. Appellant claims the limitation period began to run on September 17, 1990, the date of appellant's layoff, while respondent argues that the limitation period began to run on July 18, 1990, the date appellant received notice of the layoff.

While no Missouri case appears to directly answer the precise question presented, re-

spondent relies primarily on *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). In *Chardon,* nontenured administrators in the Puerto Rico Department of Education were each notified by letter on dates prior to June 18, 1977 that their appointments would terminate at a specified date between June 30 and August 8, 1977. On June 19, 1978, one of the administrators filed a complaint alleging that the terminations violated 42 U.S.C. § 1983. The District Court dismissed, holding that the action occurred on the date the employees received the letters and that the claims were therefore barred by the applicable 1–year statute of limitations. The Court of Appeals for the First Circuit reversed on the ground that the limitations period did not begin running until respondent's appointments ended. *Rivera Fernandez v. Chardon,* 648 F.2d 765 (1st Cir.1981). The Supreme Court reversed based on the decision of *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In *Ricks,* a professor at a state college filed suit alleging that the denial of tenure deprived him of his rights under 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1981. The Supreme Court held in *Ricks* that the applicable limitations period began to run when the tenure decision was made and Ricks was notified, rather than on the date his employment terminated. *Id.,* 449 U.S. at 259, 101 S.Ct. at 504. His action was therefore time-barred. *Id.,* 449 U.S. at 262, 101 S.Ct. at 506.

The Supreme Court applied the rule of *Ricks* in *Chardon,* stating:

> We think *Ricks* is indistinguishable. When Ricks was denied tenure, he was given a 1–year "terminal" contract. Thus, in each case, the operative decision was made—and notice given—in advance of a designated date on which employment terminated. In *Ricks,* we held that the proper focus is on the time of the **discriminatory act,** not the point at which the **consequences** of the act became painful. 449 U.S., at 258, 101 S.Ct. at 504. The fact of termination is not itself an illegal act. In *Ricks,* the alleged illegal act was racial discrimination in the tenure decision. *Id.,* at 259, 101 S.Ct., at 504. Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights. There were no other allegations, either in *Ricks* or in these cases, of illegal acts subsequent to the date on which the decisions to terminate were made. As we noted in *Ricks,* "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.,* at 257, 101 S.Ct., at 504. In the case at bar, respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which suit must be filed.

*Chardon,* 454 U.S. at 8, 102 S.Ct. at 29. (Footnote omitted.) (Emphasis original.)

The logic of *Chardon,* however, does not necessarily apply to the facts and circumstances of the present case. Here, the letter appellant received stated that appellant, "unless otherwise notified," would be laid off on September 17, 1990. Appellant's affidavit in opposition to respondent's motion for summary judgment, not countered by respondent, provided that appellant was told by Borlin not to be concerned about the letter "because Borlin needed totals at the time and would be relooking at the layoff list and pulling people off the list." This statement of Borlin and the interrogatories which reflect that six persons were removed from the layoff list are sufficient for appellant to reasonably infer that the receipt of the letter was not the final decision. Therefore, he could reasonably construe the communication from Borlin as being "otherwise notified" as to the layoff. According to appellant's affidavit, Borlin's statement was in fact so construed by appellant.

"For purposes of Rule 74.04, a 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *ITT Commercial Finance,* at 382[17]. Here, Borlin's statement, as established through appellant's affidavit, evidences two plausible, but contradictory, accounts of the essential fact of whether the termination let-

ter which appellant received or his actual termination was the final operative decision. Thus, there is a genuine issue as to the material fact of when the limitation period for appellant to file his complaint with MCHR began to run, and when that limitation period expired. Thus, on the record presented, summary judgment is inappropriate on the basis that appellant's complaint with MCHR was untimely filed.

In his second point, appellant contends the trial court erred in granting summary judgment on the basis that appellant is not a "handicapped person," as defined by § 213.010. Respondent's motion for summary judgment averred that since (1) appellant stated in his deposition he was receiving Social Security Disability benefits; (2) in order to receive these benefits a claimant must be unable to perform substantial gainful work; and (3) appellant was considered unable to work by the Social Security Administration since the date of his layoff from respondent, appellant is not a handicapped person as defined by Missouri law because his inability to perform substantial gainful work interferes with the performance of his job and he is not entitled to recover against respondent.

Appellant's affidavit filed in response to respondent's motion for summary judgment stated that on the advice of his doctor, appellant was encouraged to seek a disability under the disability insurance program; from July 18, 1990 until the date of his termination on September 17, 1990, he reported for work and performed his duties; up until the day he was terminated he was led to believe that he would be withdrawn from the lay-off list as were other employees; he obtained this impression based upon comments made to him by supervisory employees; he felt he had no alternative but to make an application for disability pending a resolution of his employment status; his termination on September 17, 1990 caused him severe depression which, in turn, is a major aspect to his total disability; he could have carried out the functions of his position since at the time he was fulfilling these duties; the depression resulting from the termination of his employment for which he spent 29 years limited his employment opportunities; he could have carried out the functions of his position or a similar position with similar duties despite his handicap and physical limitations, but respondent did not make any attempt to accommodate him; and, he was terminated without being provided an opportunity to retain his position or to assume any position with similar duties.

Respondent argues that appellant admitted to being totally disabled since the date his layoff became effective and, by definition, it is impossible to "reasonably accommodate" an individual who is totally disabled to the point he cannot perform any "substantial gainful work." Respondent's main authority is *August v. Offices Unlimited, Inc.*, 981 F.2d 576 (1st Cir.1992). In *August*, employee requested a leave of absence from his job as an office furniture salesman due to clinical depression. He received a six-week paid leave, beginning on March 27, 1989. In early May, 1989, employee contacted his supervisor to notify him that he would not be able to return to work at the scheduled end of the leave period. Employee was given an additional two weeks off, but was told that the additional time would count as vacation. Employee, at a meeting with representatives of his employer, stated that he felt he would be ready to return to work by May 22, 1989, but asked if he could "come back on a part time basis" and if he "could miss the first couple of sale meetings because the sales meetings were in the morning" when he experienced side effects of the antidepressant medication. These requests were refused. On May 12, 1989, employee made out and executed a claim application under his employer's disability plan, asserting that he had been totally and continuously disabled since March 24, 1989. Employee failed to show up for work on May 22, 1989, and was subsequently terminated. Employee's renewed applications for disability benefits all stated that employee had been disabled since March, 1989. The court stated, "Under any definition of the term, [employee's] declaration that he was 'totally disabled' means that he was not able to perform the essential functions of his job ..., with or without reasonable accommodations, since late March 1989." *Id.*, at 581. The court also stated,

"Having conceded that he was totally disabled at all relevant times, [employee] cannot now establish that he was a 'qualified handicapped person' and thus cannot make the **prima facie** case required to prevail on his claim . . . ," and that summary judgment was proper because there were "no genuine issues of material fact as to whether [employee] could have performed his job if his handicap had been accommodated." *Id.,* at 584. The court, however, relied on other factors in determining that employee was disabled from performing his job, including the fact that employee had undergone psychiatric treatment and showed no sign of returning to work; he told his superiors he would not be able to return to work at the end of the scheduled leave period; he was not ready to return to work on May 22, 1989; there was nothing in the record from which a trier of fact might conclude that on or after May 22, 1989, employee was in fact able to work in some capacity; and, employee did not renounce his statements on the insurance forms of total disability, nor point to facts which could raise any issue as to whether he was totally disabled during the period in question. *Id.,* at 582, 583.

Here, however, appellant's affidavit stated that he was capable of performing his job duties, and was in fact performing those duties up until the day he was laid off. Appellant explained in his deposition that he met with Dr. Van Ryn who told him that he could not go out in the labor field and get another job because of his limitations and advised appellant to take full disability. Appellant followed that advice. Appellant also stated in his deposition that the basis of his claim for "Social Security" was "combination of heart, ulcers, which my ulcers got worse. I'm on heavier medication since I was laid off. I went into a very nervous condition, and a very deep depression after I was laid off." Appellant's affidavit states that his termination of September 17, 1990 caused him severe depression which, in turn, is a major aspect of his total disability. Thus, unlike the situation in *August,* the record here contains evidence which could establish that appellant was capable of performing his job duties, even though he filed an application for total disability benefits.

Respondent argues it can "hardly be said" that appellant was continuing to perform his job after he received the termination letter because Westerfield, appellant's supervisor, told appellant that his major responsibility during the last couple of months of his employment was to find another job. However, "the rule that the non-movant [under Rule 74.04] is 'given the benefit of all reasonable inferences' means that if the movant requires an inference to establish his right to judgment as matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails." *ITT Commercial Finance,* at 382[18–21]. Here, respondent relies on Westerfield's statement for the inference that appellant did not perform job duties during the last two months of his employment with respondent. However, appellant stated in his affidavit that from July 18, 1990 until the date of his termination on September 17, 1990, he reported for work and performed his duties. Thus, a genuine dispute exists as to whether appellant was performing his job duties during the last two months of his employment.

Respondent made no assertion in the trial court, and makes no assertion here, that the determination of total disability by the Social Security Administration collaterally estops appellant from claiming in the present action that he could perform the duties of his job. Respondent essentially contends that appellant's application for total disability benefits serves as an admission by him that he is incapable, due to his condition, of performing the essential functions of his job, and that this admission withdraws from the case the issue of whether appellant is "handicapped" under § 213.010.

■ We do not find the fact that appellant applied for disability benefits dispositive of the issue of whether appellant is or was capable of performing his job duties. At most, a statement in appellant's application or in his deposition regarding his ability to work would be an evidentiary admission subject to explanation or impeachment by other evidence at trial. *Guthrie v. Missouri Meth-*

*odist Hospital,* 706 S.W.2d 938, 942[6] (Mo. App.1986). *See also, McCormick on Evidence,* § 254 at 142 (4th Ed.1992). A statement by a party prior to the trial, although admissible as impeachment, does not destroy the trial evidence as proof. *Joplin v. Missouri Commission on Human Rights,* 642 S.W.2d 370, 372[3, 4] (Mo.App.1982). Contradictions between appellant's trial testimony and his application and deposition are matters for the trier of fact, and under these circumstances are not amenable to summary judgment. *See, id.* In any event, appellant's claim application is not before us, nor are any other documents from the Social Security Administration.

Even if appellant admitted in his deposition that he agreed with the Social Security Administration's determination that he met the requirements for total disability as of September 17, 1990, this admission still does not resolve the issue. Appellant's statements in the record that he was capable of performing the duties of his job and was performing those duties until the date he was terminated, and his statements that the termination caused him severe depression which is a major aspect to his total disability, indicate that there is a genuine issue as to the material fact of whether appellant was capable of performing his job duties. Thus, summary judgment on the basis that appellant is not a handicapped person under § 213.010 was improper.

The summary judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.

PUDLOWSKI and KAROHL, JJ., concur.