Gary LOMAX, Appellant,

v.

**DAIMLERCHRYSLER CORPORATION,**
Respondent.

No. ED 88071.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 18, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 23, 2008.

Transfer Denied April 15, 2008.

Jerome J. Dobson, St. Louis, for appellant.

John M. Hessel, St. Louis, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Gary Lomax appeals from a judgment entered by the Circuit Court of St. Louis County granting DaimlerChrysler Corporation's Motion for Summary Judgment with respect to Mr. Lomax's claim for disability discrimination in violation of the

Missouri Human Rights Act ("MHRA"). We reverse and remand.

### Facts and Proceedings Below

Mr. Lomax began working at Daimler-Chrysler in June 1969 as a union worker on the two vehicle assembly lines at the DaimlerChrysler plant in Fenton, Missouri. During his employment, Mr. Lomax experienced a series of medical problems that interfered with his ability to work for extended periods of time.[1]

Mr. Lomax last worked for Daimler-Chrysler in December 2001. Prior to taking disability leave, Mr. Lomax worked as an Inspector for approximately 50 hours per week. Mr. Lomax's job duties included attaching a cable to the onboard computer beneath the steering wheel of each vehicle to ensure that the vehicle's electrical system was working properly. To perform this task, Mr. Lomax had to continuously bend, kneel and walk on a cement floor next to the vehicles as they moved down the assembly line.

In December 2001, Mr. Lomax went on disability leave. His leave continued until July 2003, when DaimlerChrysler terminated his employment. During that period, Mr. Lomax claimed that the pain in his back, left arm, shoulder and right leg and foot prevented him from working. As a result of the pain in his foot, Mr. Lomax stated that he had to wear a "Cam Walker" boot.[2] In January and October 2002, Mr. Lomax had surgeries on his right foot to remove neuromas and in January 2003, Mr. Lomax had surgery on his left elbow and shoulder.

While on leave between December 2001 and July 2003, Mr. Lomax received disability benefits through a third-party entity called ESIS. As part of administering the disability-benefit program, ESIS periodically sends Certification of Continuous Disability ("CCD") letters to employees on disability leave, either on an annual or semi-annual basis. On December 16, 2002, ESIS sent a CCD letter to Mr. Lomax. Thereafter, Mr. Lomax responded by providing information about his medical condition and explaining why he was unable to work at the time. In particular, Mr. Lomax stated that had a burning sensation in, and could not put weight on, his right foot. He also stated that he had numbness and a burning sensation in his left arm and fingers, which prevented him from holding onto various objects. Mr. Lomax noted that he had surgery scheduled on his left arm for January 10, 2003. This was the last CCD letter that Mr. Lomax completed prior to his termination by DaimlerChrysler.

On June 11, 2003, after receiving an anonymous tip that Mr. Lomax was performing maintenance work, lawn work and painting for his landlord, DaimlerChrysler contacted ESIS and requested that it conduct immediate surveillance on Mr. Lomax. Over a period of one month, a surveillance company watched Mr. Lomax for a total of five hours. During these five hours, the investigators observed Mr. Lomax entering his car without his Cam Walker boot and driving it for approximately one hour and fifteen minutes. They also recorded Mr. Lomax—for a period of approximately one hour—walking normally and wearing moccasins while car-

---

1. From May 12, 1984 to August 5, 1996, Mr. Lomax was on disability leave after a doctor cut a nerve in his right leg. Following his return to work in 1996, Mr. Lomax's medical problems—including a tumor on his spinal cord—prevented him from working for addi-

tional periods of time, including a period of more than six months in 2000 and 2001.

2. A Cam Walker boot comes up to the knee, spreads out at the bottom and attaches around the leg with Velcro.

rying bags of trash and a hose, washing his car, bending, walking without a limp and squatting. On another day the investigator watched Mr. Lomax for almost three hours while Mr. Lomax, wearing normal shoes, performed various tasks related to yard work. The following day, the investigators observed Mr. Lomax for approximately two hours while Mr. Lomax mowed grass and trimmed weeds. Finally, the investigators recorded Mr. Lomax—for approximately two minutes—carry armloads of firewood.

On June 26, 2003, Mr. Lomax's treating physician informed ESIS that Mr. Lomax was scheduled to undergo surgery on his foot and would be unable to work until after the surgery. ESIS then requested the treating physician complete an attending physician's statement to document his treatment of Mr. Lomax. Thereafter, Mr. Lomax's treating physician sent a statement to ESIS that he had diagnosed Mr. Lomax with tarsal tunnel syndrome, that Mr. Lomax was scheduled for surgery on July 18, 2003, and that he would be totally disabled and unable to work until after the surgery. Mr. Lomax subsequently received a letter from ESIS informing him that he was scheduled to undergo an independent medical evaluation by Dr. Phillip George to assess his ability to work.

On July 15, 2003, after viewing the surveillance videos, supplied to him by DaimlerChrysler, and reviewing the investigator's notes, Dr. George examined Mr. Lomax. Following the examination, Dr. George wrote a report of his examination, reviewed Mr. Lomax's past history and concluded that Mr. Lomax had no physical disability and could return to work on the assembly line without any functional restrictions. Dr. George contended that Mr. Lomax "exaggerated his complaints during the medical exam" and stated that "[i]n my opinion, this man is clearly exaggerating his physical symptoms and I can certainly see no reason why this gentleman cannot return to work."

The following day, at DaimlerChrysler's request, Dr. Paul Malak, after viewing the surveillance videos, reviewing the investigator's notes and Dr. George's report, examined and evaluated Mr. Lomax's right foot. After examining Mr. Lomax, Dr. Malak concluded that the activities in the videos were inconsistent with Mr. Lomax's claimed medical restrictions. Dr. Malak stated that Mr. Lomax was capable of performing his ordinary job and that the use of the Cam Walker boot was unnecessary.

Following both examinations, Mr. Ron Wander, Senior Manager of Human Resources at the assembly plant where Mr. Lomax worked, along with other representatives from DaimlerChrysler's human resources and security departments, called Mr. Lomax to a meeting. Thereafter, one of the security officers informed Mr. Lomax that investigators had recorded him performing various physical activities and Mr. Wander informed Mr. Lomax that he was being suspended. Two days later, DaimlerChrysler sent Mr. Lomax a letter terminating his employment for allegedly violating DaimlerChrysler's Standards of Conduct.[3]

According to Mr. Wander, he decided to discharge Mr. Lomax because he provided false information regarding his disability to DaimlerChrysler. Mr. Wander did not review any of Mr. Lomax's medical records before making his decision to discharge Mr. Lomax and did not find that Mr. Lomax falsified any of his medical documentation. However, Mr. Wander

---

**3.** Neither the suspension notice nor the letter of termination identify which of Daimler-Chrysler's Standards of Conduct Mr. Lomax violated.

advised that he based his decision to terminate Mr. Lomax on his conversation with Dr. Malak, a review of the surveillance videos prepared by the surveillance company, and Mr. Lomax's alleged admission that he had lied about his disability.[4]

Mr. Lomax filed a claim with the Missouri Human Rights Commission ("MHRC"), asserting that DaimlerChrysler failed to provide him with a reasonable accommodation and therefore, terminated his employment on account of his disability. In October 2004, after receiving a right-to-sue letter from the MHRC, he filed a two-count suit alleging that DaimlerChrysler violated the MHRA by discriminating against him on the basis of his disability. Specifically, Mr. Lomax claimed that DaimlerChrysler denied him the reasonable accommodation of additional time off of work and retaliated against him—for a previous claim of disability discrimination—by terminating his employment. DaimlerChrysler moved for summary judgment on Mr. Lomax's disability discrimination claim. The trial court sustained DaimlerChrysler's Motion. Mr. Lomax appeals.[5]

### Standard of Review

As an initial matter, "summary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007). "Summary judgment should not be granted unless evidence could not support any reasonable inference for the non-movant." *Id.*

It is well-settled law that when considering an appeal from a grant of summary judgment, we review the record in the light most favorable to the non-movant. *ITT Comm'l Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Our review of summary judgment is *de novo. Id.* We apply the same criteria on appeal as that applied by the trial court to test the propriety of summary judgment. *Id.* The burden of proof on summary judgment is to establish a legal right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378. "The moving party bears the burden of establishing a right to judgment as a matter of law." *Powel v. Chaminade College Preparatory, Inc.,* 197 S.W.3d 576, 580 (Mo. banc 2006).

### Analysis

When determining whether an MHRA claim survives summary judgment, "a plaintiff has no higher standard to survive summary judgment than is required to submit a claim to a jury." *Daugherty,* 231 S.W.3d at 820. MAI 31.24 sets forth the factors for submission of an MHRA claim to a jury as follows:

Your verdict must be for plaintiff if you believe:

First, defendant (*here insert the alleged discriminatory act, such as "failed to hire, discharged" or other act within the scope of Section 213.055, RSMo* ) plaintiff, and

Second, (*here insert one or more of the protected classifications supported by the evidence such as race, color, religion, national origin, sex, ancestry, age, or disability* ) **was a contributing factor** in such (*here, repeat alleged discrim-*

---

4. Mr. Lomax denied making this admission in his deposition.

5. Mr. Lomax does not challenge the trial court's judgment with respect to the retaliation claim.

inatory act, such as "failure to hire," "discharge," etc.), and

Third, as a direct result of such conduct, plaintiff sustained damage.

*[unless you believe plaintiff is not entitled to recover by reason of Instruction Number (here insert number of affirmative defense instruction)].

MAI 31.24 (6th Ed. Supp.2007) (emphasis added). In Daugherty, the Court determined that in light of MAI 31.24, a plaintiff's claim of discrimination under the MHRA survives summary judgment, "if there is a genuine issue of material fact as to whether [disability] was a 'contributing factor' in the [employer's] termination decision." 231 S.W.3d at 820. Here, as in Daugherty, the parties dispute whether Mr. Lomax has a disability within the meaning of the MHRA. Under such circumstances, a court "must determine whether [an employee's] claim survives summary judgment on the issue of whether he has a disability within the protections of the MHRA," prior to applying the MAI 31.24 "contributing factor" analysis. Id.

### A. MHRA Coverage

■ In his first point, Mr. Lomax contends the trial court erred in granting summary judgment in DaimlerChrysler's favor because genuine issues of material fact exist regarding whether Mr. Lomax had a disability within the meaning of the MHRA.

■ The MHRA provides that it is unlawful for an employer to discriminate against or discharge any employee because of a disability. § 213.055.[6] Under Section 213.010.4, a disability is a:

physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job[.]

"[I]n order to be disabled under the MHRA, a person must have an impairment that limits a major life activity and with or without reasonable accommodation that impairment must not interfere with performing a job." Medley v. Valentine Radford Comms., Inc., 173 S.W.3d 315, 320–21 (Mo.App. W.D.2005). "An employer must make reasonable accommodations to the known limitations of a [disabled] employee or applicant, including making the facilities accessible and usable and job restructuring or part-time or modified work schedules." Medley, 173 S.W.3d at 321. However, an accommodation that imposes undue financial and administrative burdens or requires fundamental alterations is not reasonable. Id. Under the MHRA, the "employer has an affirmative duty to reasonably accommodate an employee's handicap but the burden is on the employee to establish that with reasonable accommodation he could perform the job." Id. Whether an accommodation is reasonable requires an "individual assessment." See id. at 321–23.

With respect to the first prong—the existence of a physical or mental impairment, which substantially limits one or more of a person's major life activities—DaimlerChrysler appears to concede, for purposes of analyzing MHRA coverage, that Mr. Lomax's medical condition prevented him from working.[7] However, the parties

---

**6.** All statutory references are to RSMo (2000), unless otherwise indicated.

**7.** In fact, DaimlerChrysler relies on Mr. Lomax's assertion that he is unable to work, and

thus entitled to disability benefits, as an additional justification for refusing to consider an accommodation. Moreover, in its Motion for Summary Judgment, DaimlerChrysler did not

clearly disagree with respect to the second prong—whether with or without a reasonable accommodation Mr. Lomax's disability interferes with the performance of his job. Mr. Lomax asserts that he is able to perform the essential functions of his job if he has surgery and is afforded "additional time off work." In response, DaimlerChrysler argues that Mr. Lomax's request for "additional time off" constitutes a request for an undefined leave of absence and is therefore *per se* unreasonable. DaimlerChrysler also contends that Mr. Lomax is, in essence, estopped from claiming that DaimlerChrysler should have reasonably accommodated him because he receives Social Security and long term disability benefits on the basis of his inability to work.

 Whether any particular proposed accommodation is unreasonable is dependent upon the facts of each case. *See, e.g., Medley,* 173 S.W.3d at 321–23. Thus, although an employer certainly is not required to provide an indefinite leave of absence, an indefinite leave might be permissible under certain circumstances. *See id.* (recognizing possible reasonableness of an indefinite leave where employee complied with short-term leave policy and could be easily replaced by temporary workers).[8] Because DaimlerChrysler admittedly never considered whether Mr.

Lomax could be accommodated—taking the position that even if Lomax had a legitimate disability, DaimlerChrysler would not have permitted Mr. Lomax to remain on disability leave after it learned of his allegedly dishonest conduct—the record is insufficient to support a determination that there is no genuine issue of material fact with respect to the "reasonable accommodation" prong of the statute.[9]

 DaimlerChrysler also argues that Mr. Lomax's application for benefits bars him from claiming that a reasonable accommodation would enable him to perform his job. More specifically, DaimlerChrysler asserts that at the time of Mr. Lomax's discharge: (1) Mr. Lomax claimed that his "condition *completely prevented him from working*"; and (2) that he was collecting Social Security benefits "based on his sworn representations that he [was] wholly unable to work any job." (Emphasis in the original). In support of its position, DaimlerChrysler relies almost entirely on *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 807, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), a case involving summary judgment under the Americans with Disabilities Act. However, this Court previously considered this issue under the MHRA in *Daffron v. McDonnell Douglas Corp.,* 874 S.W.2d 482, 486 (Mo.App. E.D. 1994). As in this case, the employer in

challenge the existence of Mr. Lomax's physical impairment that substantially limited one of his major life activities. Thus, DaimlerChrysler cannot raise this issue for the first time on appeal. *See Landvatter Ready Mix v. Buckey,* 963 S.W.2d 298, 303 (Mo.App. E.D. 1997).

8. Indeed, in this case, the record is undisputed that DaimlerChrysler permitted very long, undefined leaves of absence when its employees were, like Mr. Lomax, on long-term disability. In fact, Mr. Lomax was absent from work at one point for twelve years but was permitted to return to work. Thus, although for some employers an undefined leave of

absence might well be unreasonable, the record here establishes that DaimlerChrysler did not consider them *per se* unreasonable.

9. We also note that denial of a reasonable accommodation may "tend to prove that the employer also acted adversely against the employee because of the individual's disability." *Kells v. Sinclair Buick–GMC Truck, Inc.,* 210 F.3d 827, 833–34 (8th Cir.2000). Thus, such evidence may support a finding that an employee's disability was a "contributing factor" in the challenged discharge. *See* discussion *infra* Part B.

*Daffron* argued that "appellant admitted to being totally disabled . . . and, by definition, it is impossible to 'reasonably accommodate' an individual who is totally disabled to the point he cannot perform any 'substantial gainful work.'" *Id.* In response, the court stated as follows:

> We do not find the fact that appellant applied for disability benefits dispositive of the issue of whether appellant is or was capable of performing his job duties. At most, a statement in appellant's application or in his deposition regarding his ability to work would be an evidentiary admission subject to explanation or impeachment by other evidence at trial.

*Id.* at 487.

Thus, consistent with *Daffron,* we do not believe that Mr. Lomax's receipt of Social Security and/or long-term disability benefits precludes a determination that he is covered under the MHRA.[10] Accordingly, we conclude that there are genuine issues of material fact with respect to whether Mr. Lomax had a disability within the meaning of the MHRA. Point granted.

### B. Contributing Factor

■ In his second point on appeal, Mr. Lomax contends the trial court erred in granting summary judgment in Daimler-Chrysler's favor because genuine issues of material fact exist regarding whether DaimlerChrysler's articulated reason for discharging Mr. Lomax was pretextual. However, in light of the Supreme Court's opinion in *Daugherty,* we focus instead on whether Mr. Lomax's disability was a contributing factor in his discharge:

> Past MHRA cases have followed a pattern of analysis articulated by the federal courts. But this Court's 2003 decision holding that jury trials are available under the MHRA . . . signals an opportu-

nity to review the analysis applied in MHRA cases. Missouri employment discrimination law . . . should more closely reflect the plain language of the MHRA and the standards set forth in MAI 31.24 and rely less on analysis developed through federal caselaw.

231 S.W.3d at 819.

■ A "contributing factor" is a condition that "contributes a share in anything or has a part in producing the effect." *McBryde v. Ritenour School Dist.,* 207 S.W.3d at 170. In particular, our Supreme Court has rejected any requirement that a plaintiff prove that "discrimination was a substantial or determining factor in an employment decision" and emphasized that if a protected characteristic "contributed to the unfair treatment, that is sufficient." *Daugherty,* 231 S.W.3d at 819.

Mr. Lomax contends that the "true motivation" behind DaimlerChrysler's decision to terminate his employment was his disability. He reasons that DaimlerChrysler's failure to review all of the necessary information, including his own doctors' notes, DaimlerChrysler's doctors' reports and the medical bases behind his restrictions, before determining that Mr. Lomax had supplied false information about his disability, illustrated the fallacy of its decision. Therefore, he argues, DaimlerChrysler's decision to terminate his employment was invalid because it was not reasonably based on particularized facts. Essentially, Mr. Lomax appears to be arguing that DaimlerChrysler latched onto the discrepancies between his stated restrictions and the activities on the surveillance tapes in order to find a reason to fire him. According to him, DaimlerChrysler should have reviewed the information supplied by his treating physician to deter-

---

10. Given our resolution of the Social Security disability benefits issue raised in point one, we decline to consider point three, which essentially raises the same issue.

mine whether his representations about his medical restrictions were supported by medical documentation and its failure to do so establishes the existence of discriminatory animus.

DaimlerChrysler rejoins that its decision to discharge Mr. Lomax was solely based on Mr. Lomax's false statements to the company about his medical restrictions. Mr. Wander, the DaimlerChrysler HR manager, testified that he decided to fire Mr. Lomax after: (1) comparing Mr. Lomax's claimed restrictions with his activities on the surveillance tapes, (2) conferring about the results of both of Mr. Lomax's medical examinations with Dr. Malak, and (3) discussing the difference between Mr. Lomax's claimed medical restrictions and the activities on the surveillance tapes with Mr. Lomax. Of particular importance to Mr. Wander was Mr. Lomax's alleged admission that he had committed disability fraud and his statement that if Mr. Wander gave him one more chance, he would be the best advocate against disability fraud.

In response, Mr. Lomax contends that there are factual disputes as to the three bases for Mr. Wander's decision to fire him. First, he asserts that Mr. Wander's comparison of the surveillance tapes with his stated medical restrictions do not establish that he lied about his restrictions because Mr. Lomax's activities do not confirm that his statements about his restrictions were ever false. Instead, he posits, they merely establish that for approximately five hours out of one month, he acted contrary to his stated medical restrictions. Second, Mr. Lomax argues that the results of his examinations with Dr. Malak and Dr. George do not establish that he lied about his condition because neither examination proved that his medical restrictions were false. Finally, Mr. Lomax asserts that his alleged admissions do not establish that he lied about his disability because he contends that he did not make the statements and admissions, as suggested by Mr. Wander.

■ The credibility of an employer's explanation of a challenged discharge is material in a discrimination case. *See* *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). Indeed, as the United States Supreme Court has concluded, "rejection of the defendant's proffered reason will *permit* the trier of fact to infer the ultimate fact of intentional discrimination[.]" *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in the original). Moreover, "[i]n appropriate circumstances the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.*

■ It is well established that credibility determinations are jury questions and not for the court to decide. *Heidrick v. Smith,* 169 S.W.3d 180, 186–87 (Mo.App. S.D.2005); *see also Reeves,* 530 U.S. at 150, 120 S.Ct. 2097. Thus, when the court is faced with a credibility determination on an issue material to the cause of action, summary judgment is not appropriate. *Powel,* 197 S.W.3d at 578. Here, if we apply the proper standard and review the record in the light most favorable to the non-movant, we must conclude that Mr. Lomax has raised a sufficient issue with respect to the credibility of DaimlerChrysler's proffered reason for his termination.

Point granted.[11]

### *Conclusion*

The judgment of the trial court is reversed and remanded.

BOOKER T. SHAW, C.J., and SHERRI B. SULLIVAN, J., Concur.

---

**11.** We acknowledge that this is a close case on summary judgment. However, we reach our decision mindful of the Supreme Court's recent (post-briefing and argument) clarification in *Daugherty* of the proper approach to summary judgment in discrimination cases, the parties use of a pre-*Daugherty* framework to pursue and defend against the motion for summary judgment and an order and judgment that did not provide us with the benefit of the trial court's analysis.