In the
 Missouri Court of Appeals
 Western District
 JAMES K. SHERRY, )
 )
 Appellant-Respondent, ) WD83635 Consolidated with
 ) WD83671
 v. )
 ) OPINION FILED: March 9, 2021
 CITY OF LEE'S SUMMIT, )
 MISSOURI, )
 )
 Respondent-Appellant. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable Cory L. Atkins, Judge

 Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge and
 Anthony Rex Gabbert, Judge

 The parties cross-appeal from a judgment of the Circuit Court of Jackson County,

Missouri ("trial court") which, after a jury trial, awarded James K. Sherry ("Sherry")

$300,000 compensatory damages for his claim of disability discrimination under the

Missouri Human Rights Act ("MHRA")1 and attorneys' fees of $220,807 against his former

employer, the City of Lee's Summit, Missouri ("City"). On appeal, Sherry claims that the

 1
 Sections 213.010 et seq. All statutory references are to the Revised Statutes of Missouri (2016) as
updated by supplement.
trial court erred in declining to award him front pay, and the City cross-appeals, claiming

that the trial court erred in: 1) denying its motions for directed verdict and judgment

notwithstanding the verdict because Sherry failed to prove that he was disabled under the

MHRA in that he could not perform the essential function of attending work regularly; 2)

denying its motions for directed verdict and judgment notwithstanding the verdict because

Sherry failed to prove he was disabled under the MHRA in that a temporary recoverable

illness is not a substantially limiting impairment; 3) giving Sherry's offered verdict director

because it misdirected and confused the jury; 4) permitting evidence of and comment on

the possibility that Sherry's illness was work-related because it was speculative and

irrelevant; and 5) overruling the City's objection to Sherry's offered jury instruction because

it offered the City's refusal to credit Sherry for his years of service when determining his

pay upon re-employment as a possible act of discrimination because Sherry did not apply

for re-employment with City. We affirm the judgment of the trial court and remand to the

trial court for a determination of appropriate attorney fees for this appeal.

 Factual and Procedural Background

 Sherry worked for the City in its water department for fourteen years, from July 28,

2003, until July 14, 2017. He started as a maintenance worker, and was eventually

promoted to equipment operator. Sherry was earning $24 per hour in 2017. He had hoped

to retire from the City; at the time of his termination he was fifty-seven.

 During Sherry's employment with the City, he had several serious illnesses. In

2005, Sherry was diagnosed with prostate cancer. He underwent chemotherapy for seven

weeks. His cancer went into remission, but after his treatment, he became more prone to

 2
illness. In 2015, he began having abdominal pain, vomiting, diarrhea, and trouble eating.

In the fall of 2016, he was diagnosed with acute pancreatitis, a condition where the head of

the pancreas is calcified so that it cannot release enzymes into the stomach to digest food.

Therefore, the pancreatic enzymes would remain in the pancreas, and they began eating the

pancreatic tissue. Sherry had bouts of pancreatitis that would come and go. Although he

tried to work through them, he had to go to the hospital for treatment when they became

too severe, usually for about two days at a time.

 In the fall of 2016, Sherry had his gall bladder surgically removed in an effort to

relieve some of the symptoms caused by his pancreatitis. It seemed to help temporarily,

but he began having problems again in February of 2017. Sherry's doctor recommended

that he have a procedure called Whipple surgery, which involved cutting off the head of

the pancreas and rerouting the intestines for food digestion. Because of the lack of leave

time he had accrued, Sherry decided to return to work and have the Whipple surgery later,

when he had accumulated enough leave time.

 At the end of June, however, Sherry contracted an E. coli infection. He had serious

symptoms including fever, vomiting, chills, and achiness that were different from his

pancreatitis symptoms. He was hospitalized on July 6, 2017, and placed in intensive care.

He was diagnosed with an abscess on his liver that had to be drained to heal, which would

take approximately six weeks. Sherry provided medical documentation to the City so that

he could take his sick leave and FMLA2 leave.

 2
 Family and Medical Leave Act of 1993, 29 U.S.C.A. section 2601 et. seq.

 3
 The City had several policies in place for sick or disabled employees, including

vacation time, sick leave, comp time in lieu of overtime, FMLA leave, short-term

disability, and discretionary leave. The City's anti-discrimination policy provided that

reasonable efforts would be made to accommodate impairments of qualified employees

with disabilities unless the accommodations would place undue burdens on the City.

Beginning in 2015, Sherry used all of his accrued vacation, sick time, comp time, short-

term disability, and FMLA leave to treat and recover from his various illnesses. On July

10, 2017, he had exhausted all of his available leave. At this point, he still required

additional time to recover from his E. coli infection, so he requested discretionary leave

from the City under its policy. Discretionary leave was put in place as an option for

employees who had run out of their FMLA and paid leave benefits. The discretionary leave

policy provided:

 311.1. Eligibility: Employees who have exhausted FMLA leave, or who
 seek unpaid leave for reasons other than FMLA leave, may apply for a
 discretionary leave of absence after 12 months of service.

 311.2. Approval: Discretionary leaves are totally within the discretion of
 the City and will be granted if the City believes the employee's time away
 from the job would be in the best interests of both the employee and the City.
 The Department Director may approve such leave when three days or less
 are requested. For additional time off, City Manager or his/her designee
 approval is required. If such a leave is approved, it will be for such length of
 time and on such other terms and conditions as the City Manager approves.

 On July 10, 2017, while Sherry was still in the hospital, Mrs. Sherry spoke with

Susan Wayman, the City's benefits specialist, and Wes Owen, Assistant Director of

Operations. Wayman stated that Sherry was eligible for short-term disability benefits

pending completion of certain paperwork, and Owen explained how Sherry could apply

 4
for discretionary leave under the policy. Mrs. Sherry completed all of the paperwork, and

gave it to Sherry's doctors for them to complete their portion. On July 12, 2017, Mrs.

Sherry submitted Sherry's paperwork for the discretionary leave and reported that Sherry's

doctors determined that he would need six weeks of treatment, which included an abscess

bag to drain the fluid from his liver and a self-administered intravenous antibiotic drip.

Sherry requested leave until August 29, 2017.

 On July 14, 2017, City administration met to discuss whether to grant Sherry the

requested discretionary leave. They decided that they would not approve the leave because

it was not in the City's best interests. They discussed Sherry's long record of impairments

and that they did not know when he would return, and they decided not to hold his position

open indefinitely. Owen called Mrs. Sherry to notify her that the City was terminating

Sherry.

 On July 18, 2017, Mrs. Sherry inquired whether Sherry could be rehired at his prior

pay rate and keep his seniority and time accrued toward retirement. The City responded

that if Sherry were to be rehired, it would be at the beginning pay rate for whatever position

he was able to fill, which would probably be $13 per hour. The City told Mrs. Sherry that

this was because if it hired Sherry in his prior position with his prior pay, the union would

file a grievance. Sherry would have retained his position and pay rate had he been granted

discretionary leave.

 Sherry recovered from his infection within the time frame the doctors had estimated

would be required and, since he had been terminated by the City, went ahead and had the

Whipple surgery for his pancreatitis in September of 2017. Sherry has not had a

 5
pancreatitis attack since the surgery. He has worked steadily for another employer but has

not been able to attain his former rate of pay. The City did not fill Sherry's position for

almost a year, and it ultimately hired someone with less experience than Sherry.

 Sherry filed suit against the City in May of 2018, claiming discrimination under the

MHRA. Sherry's prayer for relief pleaded for "an award of compensatory and punitive

damages, pre-judgment and post-judgment interest as provided by law, for his costs

expended, reasonable attorneys’ fees, and for such other relief as this Court deems just and

proper, including equitable relief." A jury awarded Sherry $300,000 in actual damages but

declined to award punitive damages. Sherry filed a post-trial motion for attorneys' fees,

costs, and equitable relief in the form of front pay, since the City had stated it could not

reinstate Sherry at his former position and rate of pay. Sherry provided an affidavit and

expert report of economist Dr. Kurt Krueger. The report calculated Sherry's front pay,

which the report defined as future lost wages and benefits over what he was receiving at

his new employment over the approximately five years until his estimated retirement,

reduced to present value. The City opposed Sherry's request, arguing, as relevant to this

appeal, that Sherry did not sufficiently plead for front pay damages. The City requested a

hearing on whether Sherry might be reinstated at his former job with the City, but it later

withdrew its request for a hearing. The trial court declined to award front pay and also

denied the City's motion for judgment notwithstanding the verdict claiming that Sherry

failed to make a submissible case of discrimination under the MHRA. This appeal follows.

 Trial Court's Denial of Motions for Judgment Notwithstanding the Verdict

 6
 We first examine the City's points on appeal, because if the City's cross appeal is

successful, it would be unnecessary to address Sherry's single point on appeal. We begin

with the City's first two points on appeal; each claims the trial court erred in denying the

City's motion for judgment notwithstanding the verdict.

Standard of Review

 In reviewing a denial of a motion for directed verdict or for judgment

notwithstanding the verdict, "we review the record to determine whether the plaintiff made

a submissible case." Bowolak v. Mercy E.t Cmtys, 452 S.W.3d 688, 695 (Mo. App. E.D.

2014). "To make a submissible case, a plaintiff must demonstrate that each and every fact

essential to liability is predicated upon legal and substantial evidence." Id. "Substantial

evidence is that which, if true, has probative force upon the issues, and from which the trier

of fact can reasonably decide the case." Id. (quoting Williams v. Trans States Airlines, Inc.,

281 S.W.3d 854, 866 (Mo. App. E.D. 2009). "[W]e review the evidence in the light most

favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable

inferences and disregarding evidence and inferences that conflict with the verdict." Id.

"Where reasonable minds can differ on the question before the jury, we will not disturb the

jury's verdict." Id.

Discussion

 The City's first point argues the trial court erred in refusing to grant its motion for

judgment notwithstanding the verdict because Sherry did not prove that he was disabled in

that he was not able to perform the essential function of attending work regularly. Section

 7
213.010(5) of the MHRA defines "disability" as "a physical or mental impairment which

substantially limits one or more of a person's major life activities, being regarded as having

such an impairment, or a record of having such an impairment, which with or without

reasonable accommodation does not interfere with performing the job. . . ." Certainly,

being unable to attend work regularly would interfere with performing most jobs. The City

relies heavily on Medley v. Valentine Radford Communications, Incorporated, 173 S.W.3d

315 (Mo. App. W.D. 2005). Medley does state that "an employee who cannot regularly

come to work is not able to satisfy any functions of the job, let alone the essential ones."

Id. at 322. Medley goes on to state, "An employer is not required to put up with employees

who do not come to work and is not required to provide indefinite leaves of absence." Id.

at 323.

 But Medley does not hold that a leave of absence is an unreasonable accommodation

as a matter of law, as the City urges us to read it. In fact, Medley is careful to distinguish

other cases where extended leave was found to be a reasonable accommodation. See, e.g.,

Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638 (1st Cir. 2000). Medley did not

thoroughly analyze whether leave would have been appropriate or possible for Ms.

Medley's position other than to say that attendance was important. The Court discussed

how Ms. Medley's job could not have been done part-time or from home, but did not factor

in that other employees had presumably been doing Ms. Medley's job when she was out

with her illness, and other employees absorbed all of her duties after she was terminated;

she was not replaced. Id. at 318. The Court in Medley seemed to focus on the fact that Ms.

Medley failed to follow her employer's procedures for times when she had to miss work

 8
due to her illness—she often did not obtain doctors' notes or seek to use the various leave

options established by her employer—the Court mentions this fact repeatedly throughout

the opinion, even distinguishing Garcia-Ayala on that basis. Id. at 322. The Court also

pointed out that Ms. Medley had missed fifteen weeks of work out of the only twelve

months that she was employed. Id. at 315. The Court emphasized that Ms. Medley was

seeking "an indefinite leave of absence," and that her employer had "no way of knowing

when she would be able to work regularly." Here, in contrast, Sherry's doctor had given

an estimate of the time he would need for his recovery, so the requested leave was less

indefinite.3

 The present case is also unlike Medley in that there was no evidence that Sherry

ignored or abused the City's leave procedures for his various illnesses. During the fourteen-

plus years that he was employed with the City, he always obtained medical records to

support his absences, and he used the various leave options that the City provided: sick

days, vacation, comp time in lieu of overtime, and FMLA leave. All of these were benefits

offered by the City, and the City's water operations were able to carry on in Sherry's

absences. His replacement was not hired until a year after his termination. Even after

Sherry had used all of the leave automatically available to him, the City had a policy in

place to provide for discretionary unpaid leave, for which Sherry had applied, providing

the accompanying requested medical records. That the City offered discretionary leave to

all of its employees who had worked for the City for a minimum of twelve months shows

 3
 This should not be read to foreclose a situation where a factfinder may determine that a requested leave
started out as a reasonable accommodation but becomes unreasonable as time wears on or as circumstances change.

 9
that it deemed extended leave a reasonable accommodation in at least certain

circumstances.

 The Eastern District of this Court recognized in Lomax v. DaimlerChrysler

Corporation, 243 S.W.3d 474 (Mo. App. E.D. 2007), that, consistent with Medley,

providing a disabled employee with extended leave could constitute a reasonable

accommodation depending on the facts of a particular case, including whether the

"employee complied with [the employer's] short-term leave policy and could be easily

replaced by temporary workers." Id. at 481. Lomax reversed the grant of summary

judgment to an employer, finding that genuine issues of material fact existed as to whether

additional leave time was a reasonable accommodation which should have been made

available to the employee. Id.

 In any event, whether an employee meets the definition of disabled under the

MHRA because he can perform a job with a reasonable accommodation in any particular

case is a question of fact to be determined by the jury, and the reasonableness of the

accommodation requested depends on such factors as "the size and nature of the employer,

the number and type of its facilities, and the structure and composition of its work force

compared to the costs of providing the accommodation." Balderidge v. Kan. City Pub.

Schs., 552 S.W.3d 699, 710 n.8 (Mo. App. W.D. 2018); see also Lomax, 243 S.W.3d at

481. The jury in this case examined the evidence and concluded that Sherry was disabled

under the MHRA, necessarily finding that his requested accommodation of discretionary

leave to recover from his illness was reasonable. We will not disturb the jury's findings on

appeal. The City's first point is denied.

 10
 The City's second point on appeal is that the trial court erred in denying its motion

for judgment notwithstanding the verdict because Sherry did not prove that he was disabled

pursuant to the MHRA in that his E. coli infection was a "temporary recoverable illness,"

which is not a substantially limiting impairment. The City compares Sherry's condition,

which had caused him substantial physical difficulties for several years and required

numerous hospitalizations and surgeries, to an employee who "suffered a broken leg in an

automobile accident, and had to be off work for 6-8 weeks to heal." We find this

comparison less than compelling.

 For this point, the City points to Missouri's regulations relating to "Handicap

Discrimination in Employment," 8 CSR 60-3.060(1). The regulations do, as the City points

out, except certain temporary conditions from the definition of physical impairment. 4 8

CSR 60-3.060(1)(B)(1) does not refer to any and all temporary recoverable illnesses but

rather provides, "Minor temporary illnesses shall not be considered physical or mental

impairments resulting in a disability. Examples of minor temporary illnesses include, but

are not limited to, broken bones, sprains[,] or colds[.]" (Emphasis added). Although

Sherry's E. coli infection, which exacerbated his pancreatitis, was temporary and,

ultimately, recoverable, it was not minor. Sherry was hospitalized and placed in intensive

care. He required a drain on his liver and intravenous antibiotics for an extended period of

time. He was unable during this time even to communicate with his employer, and his wife

 4
 8 CSR 60-3.060(1)(A)1 defines a physical or mental impairment as "[a]ny physiological disorder or
condition, cosmetic disfigurement or anatomical loss affecting one (1) or more of the following body systems:
neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular;
reproductive; digestive, genito-urniary; hemic and lymphatic; skin; and endocrine[.]"

 11
had to communicate for him. He required six weeks to recover from the infection, which

included an abscess bag to drain the fluid from his liver and a self-administered intravenous

antibiotic drip, and then had a second surgery to alleviate the pancreatitis.

 The City compares Sherry's ailments to an employee's acute MS episode in a Tenth

Circuit, Americans with Disabilities Act case, Sorenson v. University of Utah Hospital,

194 F.3d 1084 (1999). In Sorenson, the employee had an episode of MS that left her

completely unable to care for herself for one week, but allowed her to continue her work

as a nurse after the episode. Id. at 1085. The City claims that this supports its position that

a temporary impairment does not render an employee disabled. We are unpersuaded. The

employee in Sorensen was fully able to resume her work as a nurse after her episode; she

did not require leave as an accommodation or any other accommodation whatsoever. Id.

Rather, Ms. Sorensen was found not to be disabled under a completely different statute,

the ADA, with a different definition of disability, and the court found that she failed to

meet that statute's definition of disability because her MS only precluded her from safely

performing the particular job of an AirMed Flight Nurse, and the court concluded that

"[t]he inability to perform a single, particular job does not constitute a substantial

limitation in the major life activity of working." Id. at 1088 (quoting 29 C.F.R. §

1630.2(j)(3) (emphasis in original). Thus, Sorenson is inapposite.

 The evidence in this case supports an inference by the fact finder that the severity

of Sherry's E. coli infection was increased due to his pancreatitis and his prior treatment

for cancer, which left him more prone to illness and infections, and while an E. coli

infection might not constitute a "physical impairment" under the MHRA and the

 12
accompanying regulations for every person in every circumstance, we are unwilling to say

that such an infection, especially in combination with other ailments, cannot constitute a

physical impairment in any person and under any circumstance as a matter of law.5

 Finally, the City claims that the trial court erred in denying its motion for judgment

notwithstanding the verdict because Sherry did not provide substantial evidence of a

"record of impairment." This argument was not preserved as it appears nowhere in the

City's motion for directed verdict, and we therefore do not address it further.

 The City's second point on appeal is denied.

 Jury Instructions

 The City's third point on appeal is that the trial court erred in submitting the verdict

director to the jury because MAI 38.01(B) contains a "defect" in that it misstates the law

because it does not require the jury to find that the employee was disabled by an impairment

of record. The paragraph of the verdict director which the City finds objectionable reads:

 First, plaintiff had a physical impairment or physical impairment of record
 that substantially limits one or more of plaintiff’s major life activities;

Standard of Review and Discussion

 The City concedes that the verdict director was based on MAI 38.01(B) and that the

City did not preserve this alleged error by objecting to the verdict director on this basis at

trial. Nonetheless, it urges the Court to review this issue de novo or, in the alternative, for

 5
 Moreover, the pancreatitis itself was a physical impairment under the MHRA. It caused Sherry to miss
work several times over a period of roughly two years, required multiple hospitalizations, and ultimately required
two surgeries (gall bladder removal and the Whipple surgery) to alleviate.

 13
plain error. In civil cases, courts may review unpreserved errors for plain error, in their

discretion, "when the court finds that manifest injustice or miscarriage of justice has

resulted therefrom." Rule 84.13(c).6

 We do not find that manifest injustice or miscarriage of justice occurred in this case,

and so we decline to conduct the requested plain-error review. The verdict director offered

to the jury was based on an MAI instruction, which is presumed to be correct and is required

to be given to the exclusion of any other instruction on the same subject. SKMDV Holdings,

Inc. v. Green Jacobson, P.C., 494 S.W.3d 537, 553, 555 (Mo. App. E.D. 2016). The City

contends that the instruction misstates the law and confused the jury in that it erroneously

allowed the jury to find a "physical impairment of record that substantially limits one or

more of plaintiff's major life activities," while it is a "legal impossibility" that an

impairment of record limits a plaintiff's major life activities. Rather, the City contends, an

impairment of record can only be perceived by the employer as limiting the employee's

activities while it in fact does not. This contention is refuted by Bowolak,425 S.W.3d at

688. Bowolak expressly found that record of impairment, being regarded as having an

impairment, and having an actual impairment were "not inconsistent and/or mutually

exclusive conditions." Id. at 696, n.5. The City's third point on appeal is denied.

 Sherry's Infection as a Work-Related Illness

 6
 All Rule references are to the Missouri Supreme Court Rules (2020), as updated by its August
supplement.

 14
 The City's fourth point on appeal is that the trial court erred in allowing Sherry to

present evidence of and to mention in argument that Sherry's E. coli infection could have

been contracted through his work with the City.

Standard of Review

 A trial court has considerable discretion in the admission of evidence at trial, and an

appellate court will reverse only for an abuse of that discretion. Secrist v. Treadstone, LLC,

356 S.W.3d 276, 280 (Mo. App. W.D. 2011). "A ruling constitutes an abuse of discretion

when it is 'clearly against the logic of the circumstances then before the court and is so

unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful,

deliberate consideration.'" Cox v. Kan. City Chiefs Football Club, Inc., 473 S.W.3d 107,

114 (Mo. banc 2015). "If reasonable persons can differ as to the propriety of the trial court's

action, then it cannot be said that the trial court abused its discretion." Lozano v. BNSF Ry.

Co., 421 S.W.3d 448, 451 (Mo. banc 2014). Furthermore, to warrant reversal, the

admission of any evidence, even if admitted in an abuse of the trial court's discretion, must

have prejudiced the objecting party by materially affecting the merits of the action. Cox,

473 S.W.3d at 114.

Discussion

 At several points during the trial, evidence was presented speculating that Sherry

could possibly have contracted his E. coli infection during his work with the City. Soon

after he developed his infection, Sherry even considered filing a workers' compensation

claim, and Sherry's wife said as much in an email to a City employee. At trial, the City's

attorney argued that Sherry's illness was not work-related, and asked several witnesses

 15
about the possibility of Sherry's illness being work-related or whether other water

department employees had ever contracted E. coli infections at work. On cross-

examination, both Sherry and his wife admitted they were not sure whether Sherry

contracted his infection through his work, and Mrs. Sherry testified that he never filed the

workers' compensation claim for this reason. The City's counsel reiterated during closing

argument that no one knew how Sherry had contracted his infection and that no other City

employee had ever contracted E. coli from work. We conclude that the brief speculation

that Sherry's infection could have been contracted while he was at work was insufficient to

affect the merits of the action. As such, we find no cause for reversal on this basis, and the

City's fourth point is denied.

 Instructional Error

 The City's fifth and final point on appeal also alleges instructional error in that it

allowed the jury to consider whether the City's refusal to credit Sherry for his service upon

rehire constituted discrimination because Sherry never in fact reapplied to work for the

City after his termination.

Standard of Review

 Whether a jury was properly instructed is a matter of law which we review de novo.

Hervey v. Mo. Dept. of Corr., 379 S.W.3d 156, 159 (Mo. banc 2013). "The party

challenging the instruction must show that the offending instruction misdirected, misled,

or confused the jury, resulting in prejudice to the party challenging the instruction" to

warrant reversal. Id.

Discussion

 16
 Instruction 6, to which the City objected, read as follows:

 Your verdict must be for plaintiff Kevin Sherry against defendant City of
 Lee's Summit, Missouri, if you believe:

 First, plaintiff had a physical impairment or physical impairment of record
 that substantially limits one or more of plaintiff's major life activities;

 Second, such impairment did not interfere with performing the job in
 question if provided reasonable accommodation;

 Third, defendant City of Lee's Summit, Missouri, either

 terminated plaintiff; or

 did not offer plaintiff short-term disability, or

 did not offer plaintiff discretionary leave, or
 would not credit plaintiff for his years of service when
 determining his pay upon re-employment, and

 Fourth, plaintiff's disability was a contributing factor in defendant's decision
 to terminate plaintiff's employment, its decision not to offer short-term
 disability, its decision not to offer discretionary leave, or its decision not to
 credit plaintiff's years of service when determining pay upon re-
 employment, and

 Fifth, as a direct result of such conduct, plaintiff sustained damage.

(Emphasis added).

 Sherry was not required to have actually reapplied for employment with the City for

this verdict director to have been supported by substantial evidence. Mrs. Sherry testified

that following Sherry's termination and while he was hospitalized, she inquired whether

Sherry could be rehired at his prior pay rate. City responded that, due to union

considerations, Sherry could only be rehired for an introductory position at the introductory

pay rate of $13 per hour instead of the $24 per hour that he was earning as an equipment

 17
operator at the time of his termination. Also, at the trial, Mark Schauffler, the Director of

Water Operations, affirmed in his testimony that Sherry would not be able to return at his

former position and pay rate if he were to seek re-employment. And although it took a

year for the City to replace Sherry, his former position had since been filled. This evidence

is sufficient to allow the jury to find that the City discriminated against Sherry by failing

to credit his fourteen years of service when determining his pay rate upon re-employment

without Sherry having to go through the futile gesture of actually applying for such re-

employment.7 Accordingly, the City suffers no prejudice by the inclusion of the

instruction, and the City's fifth point on appeal is denied.

 Equitable Relief

 We next move to Sherry's single point on appeal, which is that the trial court abused

its discretion in declining to award him front pay after the jury found that his termination

was discriminatory on the basis of his disability.

Standard of Review

 A review of a trial court's refusal to amend a judgment is for abuse of discretion.

Coyle v. City of St. Louis, 408 S.W.3d 281, 291 (Mo. App. E.D. 2013). "As an equitable

 7
 We find somewhat analogous a case involving another portion of the MHRA, Van Den Berk v. Mo.
Commission on Human Rights, 26 S.W.3d 406 (Mo. App. E.D. 2000). Van Den Berk notes that the MHRA, as it
applies to housing, finds as a discriminatory practice a refusal to negotiate with members of a protected class as well
as a refusal to rent to them, and states:
 Common sense dictates that when a landlord refuses to negotiate, an offer to rent becomes an
 exercise in futility. The purpose of the statute is frustrated if we require the victim of a landlord's
 refusal to negotiate to prove the elements of a refusal-to-rent case because a refusal to negotiate
 accomplishes the identical discriminatory result as a refusal to rent. Therefore, a prospective tenant
 faced with a landlord's refusal to negotiate does not have to make an offer to rent in order to raise a
 housing discrimination claim.
Id. at 412-13.

 18
remedy, the decision to award or deny front pay falls within the discretion of the trial

court." Pitcher v. Centene Corporation, 602 S.W.3d 216, 243 (Mo. App. W.D. 2020)

(citing Gilliland v. Mo. Athletic Club, 273 S.W.3d 516, 524 (Mo. banc 2009)).

Discussion

 As Sherry points out, the MHRA makes equitable relief, in the form of either

reinstatement or front pay,8 available to a plaintiff who has suffered discrimination. The

objective of equitable relief is to make the plaintiff whole. Id. In Coyle, the city employer

conceded that front pay was appropriate, the employee having established his case for

discrimination, and this court merely remanded for a determination of the proper amount.

408 S.W.3d. at 292. However, an award of front pay is not mandatory when reinstatement

is not feasible, even when discrimination has been established as equitable relief is

discretionary.

 In Gilliland, also cited by Sherry, the Missouri Supreme Court noted that, while a

trial court, pursuant to section 213.1119 "can consider front pay in lieu of reinstatement[,

as] an equitable remedy, the decision to award or deny front pay falls in the discretion of

the trial court." 273 S.W.3d at 524. Gilliland was unusual in that the plaintiff's MHRA

claims were all unsuccessful, and he prevailed on a common law constructive-discharge

claim, but the Court still addressed the trial court's discretion and surmised that "the trial

 8
 "Front pay is an equitable remedy, an offshoot of the court's equitable power to grant reinstatement and
otherwise make whole a victim of discrimination." Gilliland v. Mo. Athletic Club, 273 S.W.3d 516, 524 (Mo. banc
2009). "The term 'front pay' describes a lump sum representing the discounted present value of the difference
between the earnings an employee would have received in his old employment and the earnings he can be expected
to receive in his present and future, and by hypothesis inferior, employment." Id. at 520 n.3 (internal citations and
quotation marks omitted).
 9
 In Gilliland, the Supreme Court cites to section 213.211, which does not exist in RSMo. We believe the
Court intended to cite to section 213.111.

 19
court determined that front pay was unnecessary because the jury's award of $60,000

sufficiently compensated Gilliland for his loss." Id. The statute specifically prefaces the

equitable remedies with the word "may" when it provides that "[t]he court may grant as

relief, as it deems appropriate . . ." making the grant or denial of equitable relief always a

discretionary decision of the trial court. However, the legislature when it adopted the

MHRA expressed its intent that a person subject to discrimination should be made whole

both for the past damages that have occurred as well as authorizing punitive damages and

various equitable remedies. State ex rel. Diehl v. O’Malley, 95 S.W.3d 82, 88-89 (Mo.

banc 2003) (citing section 213.111). Those equitable remedies include reinstatement, or

front pay in lieu of reinstatement. Accordingly, to refuse to compensate a victim of

discrimination for the future damages caused by the inability of the employee to be

reinstated appears inconsistent with the intent of the legislature. See Berry v. Volkswagen

Grp. of Am., Inc., 397 S.W.3d 425, 433 (Mo. banc 2013).

 In this case, the issue of front pay was extensively briefed by both parties in their

respective post-trial motions. There is no question the trial court had sufficient guidance

before it to make this discretionary call. The evidence presented at trial was that Sherry's

lost wages up to the date of trial were $30,880 and the jury awarded $300,000

compensatory damages, which included his emotional damages. The expert's report,

presented to the court post-trial, concluded that Sherry's potential claim for front pay,

discounted to present value of future lost wages and benefits for approximately five years

until the age of retirement was $182,082. We conclude that in this case, it was within the

trial court's discretion after consideration of all of the evidence including the sum awarded

 20
to Sherry by the jury to determine that front pay would not be awarded in this case. We

cannot say that the trial court abused its discretion in this regard. Sherry's point on appeal

is therefore denied.

 Conclusion

 For all of the above-stated reasons, we affirm the judgment of the trial court in all

respects. Sherry filed a motion with this court for an award of his attorneys' fees on appeal

pursuant to section 213.111 and Local Rule 29, which we took with the case. Sherry's

motion is granted, and while appellate courts have the authority to award attorney fees on

appeal, because the trial court is better equipped to hear evidence and determine the

reasonableness of the fee requested, we remand to the trial court to determine a reasonable

award of attorneys' fees on appeal. Goins v. Goins, 406 S.W.3d 886, 892 n. 1 (Mo. banc

2013).

 __________________________________
 Gary D. Witt, Judge

All concur

 21